SOUTHERN EXPRESS COMPANY, plaintiff in error, *vs.* JOSEPH M. NEWBY, defendant in error.

1. An express company which pursues continuously, for any period of time, the business of transporting goods, packages, &c., is a common carrier; and in case of loss of the goods, &c., the presumption of law is against it; and no excuse will avail it unless the loss was occasioned by the act of God, or the public enemies of the State.

2. The responsibility of the carrier commences with the delivery of the goods to himself or agent at the place where he is accustomed or agrees to receive them.   And if the agent agrees to receive them at the depot where they are at the time, the liability as a common carrier begins.

3. Where the Southern Express Company gave a receipt acknowledging the delivery of certain goods "to be forwarded," and expressing in the receipt that the company would not be liable for any loss from any cause whatever, except for fraud or gross negligence, and that where the value of the property was not specified in the receipt, the company would not be liable for a sum exceeding fifty dollars for each package: *Held,* that the receipt is evidence only of the reception of the goods by the company for the purposes therein specified, and is not evidence of an express contract: *Held,* also, that such an express contract as is contemplated by the Rev. Code, Sec. 2042, cannot be proved in this way; and the giving of the receipt and the acceptance of it by the shipper, do not relieve the company from the liability imposed by the law upon common carriers.

4. The liability of the carrier commences when he receives the goods; and if they be lost he must show such facts as will relieve him from liability, or he will be held responsible.

5. The Court is not bound to give in charge a general proposition, though it be the law, unless it be applicable to the facts of the case; and if such general charge be requested, he may modify or add to it so as to make it pertinent to the facts and the issue to be tried.

Assumpsit, &c.    Motion for new trial.    Decided by Judge GIBSON.  Richmond Superior Court.  January Adjourned Term, 1867.

. Newby brought an action in the usual form against the Southern Express Company, (a corporation) to recover the value of certain sugars and yarns, alleged to have been lost by the defendant while in its charge as a common carrier from Charlotte, North Carolina, to Richmond, Virginia. The contract for shipment was alleged to have been made in said Charlotte.

Before going into trial, the plaintiff proposed to amend his declaration, by charging that the contract for shipment was made with Shuter, President of. the Company, at Augusta, Georgia, before the delivery of the goods at Charlotte; but this was not done.  The testimony was as follows :

Plaintiff testified : that about the 17th of December, 1864, he told Shuter, who was then the acting President of the Company, at Augusta, Georgia, that he had said sugars and yarns at said Charlotte, and wished to turn them over to the Company to be forwarded; Shuter agreed to send (and did send) a dispatch to the agent at Charlotte to receive them.  The goods were worth more than is claimed for them ; they were then insured, but the insurance ran out in a few days, and was not renewed, because plaintiff considered them turned over to the Company.  This arrangement was not made as a favor or accommodation to the plaintiff; he did not agree to take any risk.  Plaintiff had a running account with the Company and did not pay the freight.

It was admitted that the said dispatch was as follows :

"AUGUSTA, GA., Dec. 17th, 1864.

T. D. GILLESPIE, *Charlotte :* Receive from Captain Taliaferro, all sugars and bales in his charge : also, lot of sugar shipped to Greensboro.        JAS. SHUTER."

Said TALIAFERRO testified : that he had charge of the goods at Charlotte for plaintiff, and could not ship them by railroad ; about said date plaintiff telegraphed him that the Company

Southern Express Company *vs.* Newby.

would take them ; Taliaferro told Gillespie that he had such a telegram ; Gillespie told him of his aforesaid, and gave him the three receipts for the goods.    There was no agreement as to limitation of liability, nothing was said about it.    This was Taliaferro's first interview with Gillespie on the subject; Gillespie had not before that refused to receive them from him.

Plaintiff's attorneys then read in evidence the receipts : one for three hogsheads, and one for twenty-one bales, consigned to Robinson, Adams & Co., and the other for thirty barrels, consigned to G. V. Scott, Richmond, Virginia.    Each of them was in the following words, *mutatis mutandis :*

SOUTHERN EXPRESS COMPANY,
CHARLOTTE, December 19th, 1864.

Received of J. N. Taliaferro, [stating packages] valued at [blank in all] dollars, and for which amount the charges are made by said Company, marked [as above stated] which it is mutually agreed is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties to complete the transportation.    It is further agreed, and part of the consideration of this contract, that the Southern Express Company is not to be held liable or responsible for the property herein mentioned, for any loss or damage arising from the dangers of Railroads, Ocean, Steam, or River Navigation, Leakage, Fire, or from any cause whatever, except the same be proved to have occurred through the fraud or gross negligence of its agents or servants, unless specially insured by it and so specified in this receipt, which insurance shall consti-tute the limit of the liability of the Southern Express Company in any event.    And if the value of the property above described is not stated by the shipper at the time of shipment, and specified in this receipt, the holder hereof will not demand of the Southern Express Company a sum exceeding fifty dollars for the loss or detention of, or damage to each package herein receipted for ; nor shall the said Company be held respon-sible for the safety of said property, after its arrival at its place of desti-nation.

☞ All articles of Glass or Liquids will be taken at shipper's risk only, and the shipper agrees that the Company shall not be held respon-sible for any injury or loss by breakage, leakage, or otherwise.

For the Company,
C. A. OVERMAN.

Freight $·····················
Charges on Value $··········
[*War Risk Excepted.*]

The following is on the margin of each receipt :

..... .......................Insured by Southern Express Company. War risk, seizure or stoppage by civil or military authority, or force, excepted for ............................. to .....................................

For the Company,

.................................

It was admitted that the goods did not reach Richmond. Plaintiff closed.

Defendant moved for a non-suit upon the ground that the suit was upon a general undertaking, and the receipts showed a special acceptance. The non-suit was refused.

The defendant's attorneys read the interrogatories of Gillespie, stating that he was agent at Charlotte, that there was no delivery of the goods to the Company; the goods were in the joint depot of the North Carolina and the Charlotte and South Carolina Railroads at Charlotte; the location of the goods were not changed, because there was no accommodation for them elsewhere, there was no actual delivery of them by removal or otherwise.

Taliaferro, who had been there about two weeks trying to forward the goods (which had come there by rail from the South) farther northward, applied to Gillespie, as agent, to forward them by express. Gillespie declined taking them because the Company's ware-houses were full, and the demand for Government transportation prevented the forwarding of any freight except on account of the Government. Several days after this, said dispatch was received ; Taliaferro gave Gillespie a memorandum of the goods, and he ordered an express receipt issued without inserting any valuation for the goods. Taliaferro wished the value inserted, but Gillespie said the Company would assume no liability for the goods till they could take them in charge, that the Company's warehouses were full, and, as he knew, private freight could not then be carried. After this explanation, Taliaferro accepted the receipt without valuation.

There was no other agreement as to liability than as aforesaid. Late in the night of the 7th of January, 1865, the joint-depot was burnt, and the goods, being yet in it, were destroyed.

They had not been removed for the Company had not room for them in its ware-houses, and because transportation could not be had for them.

The joint-depot was made of brick, metal-roofed, with iron supporters, and had heavy batten doors, and no windows. Witness considered it a fire-proof building, whereas the Company's ware-house was a wooden building, put up during the war.   Witness and A. H. Welsh, his freight agent, and C. T. Walker, also in the freight department, tried to have these, and the other goods in the Company's ware-house, transported over the railroad.   By usage, the first received stood first for shipment, and others received before these were burnt with them.   It would have taken seventy-five or one hundred cars to have carried all the goods which had preference of these.   Such was the demand for government transportation these cars could not be had, and this caused the delay.

MICHAEL J. O'BRIEN testified substantially the same as to the Company's ware-house being of wood, being full for want of transportation, and even had there been no Governmental interference, it would have taken a month to have reached these goods in their order.

The record discloses that "the Revised Code of North Carolina (was) received in evidence," but what part of it was read, does not appear.

In rebuttal, Taliaferro testified that he had stated all that passed between him and Gillespie, that nothing was said about limitation as to fire, nor any other limitation in the receipt, and that Gillespie, on the same day, received other goods, (as sugars from Brown.)

As to the charge of the Court, see the motion for new trial. The verdict was for the plaintiff for $5,856.31 and costs.

The defendant's attorneys moved for a new trial, averring that the Court erred, 1st, in refusing the non-suit, and 2d, because "the verdict was against evidence," and because the Court erred in giving the following charge :

1st. Express Companies are common carriers, according to the principles laid down by common-law, and by the Code of Georgia.

2d. Common carriers are liable for all losses not occasioned by the act of God, or public enemies.

3d. A common carrier is an insurer for the delivery of goods entrusted to them, and liable for losses from all causes but the act of God or public enemies, and cannot limit its responsibility by notice or special acceptance.

4th. That in the absence of such express or special contract, no notice given in this case by the agent of the defendant at Charlotte, either by publication, or by entry on receipts given, or verbally, will relieve the defendant from liability.

5th. That even if anything that transpired between the agent of the plaintiff at Charlotte, and of the defendant there, amount to a limitation of liability, and an agreement that the defendant was not to be bound if the goods were destroyed by fire; yet, if a contract had been previously made by the plaintiff with the acting President in this State, without any limitation of liability, or notice to that effect given by such President, the acts or notices given by the Company's agent in Charlotte could not, and did not, set aside the contract made between the plaintiff and the President.

6th. That even if the jury should find that there was a contract in this case between the agents of the plaintiff and the defendant, which stipulated that the defendant should be exempted from loss by fire, or any notice given in the receipt which has the effect of such contract; still the *onus* of showing, not only that the cause of loss was within the terms of the exception, but also that there was no negligence, lies on the carrier.

7th. That in this case, though the jury should think that there is an entry on the receipt which exempts the Company from loss by fire, still, before any advantage can be had of this, the Company must show that there was no negligence on their part, nor on the part of any of their subordinate agents, who had this property in store, in the matter of the fire.

8th. That if the goods in this case were received by Gillespie, the agent, the place of storage then became a matter of discretion with him; and if he chose to let it remain upon storage in the railroad store-rooms, the servants and agents

there, for the purpose of such storage, became the servants and agents of the Company, and the proof that they were not negligent in the matter of this fire, is required of the defendant.

Fourth, That the Court erred in refusing to charge, as requested by the defendants in writing :

1st. That if the jury believe, from the evidence, that it was agreed between the parties, that the defendant was to receive and keep the goods alleged to have been lost, for a reasonable time, or until they could be sent forward on the railroad, the defendant, during that time, is to be considered and treated as a ware-house man, and liable as such ; and if the jury find from the evidence that the goods were lost or destroyed while they were so held, then the defendants are not liable, unless it is satisfactorily shown that the loss was the result of the negligence or improper conduct of the defendant.

2d. That if the jury believe from the evidence that the defendant, by its agents, executed the papers in evidence, called receipts, intending thereby to acknowledge the receipt of the goods, and to express and set forth the stipulations and conditions on which the defendant received the goods, and agreed to send them forward, and it was accepted by the agent of the plaintiff, then they become the express contract or evidence of the contract between the plaintiff and defendant, and both are bound by it.

3d. That if liable at all, the defendants are only liable, under the receipt, for fifty dollars on each package of goods.

4th. That, according to the evidence in this case, the defendants were not common carriers, but forwarding merchants.

Fifth. That the defendants asked in writing for the following charge: "That it is not necessary, to make or constitute a special contract, that both parties should sign the same; but if one party signs or executes it, and the other accepts it as made, then it is the contract of both parties, and both are bound by it;" which charge the Court gave with the following qualification : " except in case of common carriers, when the special agreement only relieves them from extraordinary care and diligence," in which qualification the Court erred.

The new trial was refused. The Judge certifies that he did charge, also, that the Company had the right to make a special contract as to terms and conditions on which to receive goods, and if such contract was made, it would control the parties, provided, however, that they could not thereby rid themselves of the obligation on them and their agents, to use ordinary care and diligence ; and that the Company might act as bailee or factor, yet when they received goods to be forwarded, they were then liable as common carriers till they delivered the goods.

GOULD & DOUGHERTY, for plaintiff in error, made the following points :

1st. The acceptance of the receipt was a special contract as therein specified. Dorr vs. N. J. St. Nav. Co., 1st Kernan, 491. York Co. vs. Centr. R. R., 3 Wall, 107. Weir vs. Adams Ex. Co., p. 2, (of a pamphlet produced by them.) King vs. Woodbridge, 34th Verm't, 57. Van Toll vs. S. E. Railway Co., 104, Eng. C. L. R., 575. Opinion of Judge Campbell, of Tennessee, (in manuscript) in Smith vs. Adams Ex. Co. N. J. Nav. Co. vs. Merchants' Bk., 6th Howard, (U. S.) 383. Newstadt vs. Adams, p. 1 in said pamphlet. Catherine Parker, vs. W. B. Dinsmore, Prest., &c., Ib. 18. Boorman vs. Adams Ex. Co., Ib. 24, (Supreme Ct. of Wisconsin.) And such acceptance set aside the carrier's common-law liability. Boykins, Ex'r vs. Boykin, 21st Ga. Repts., 526.

2d. The non-suit should have been granted. Story on C., §13.

3d. That when such special acceptance is made, the shipper must prove want of ordinary care, &c. Story, 573, 5th B. & C., 322. Newstadt vs. Adams Ex. Co., (*ante*) p. 7. N. J. Nav. Co., vs. Mer. Bank, (*ante*) 6th Howard, (U. S.) 384.

4th. That if defendant was liable at all, it was for only $50 on each receipt. Newstadt's case, *ante.* Boorman vs. Adams Ex. Co., *ante.* Van Winkle vs. Adams Ex. Co., Sup'r Ct. of N. York, pamph. 23. Meritz Meyer vs. Harnden's Ex. Co., pamph. 19. Parker vs. Dinsmore, *ante*, and the manuscript opinion, *ante.*

E. STARNES, for defendant in error, replied, that under the evidence, defendant was a common carrier, citing Story on B., 495, Code of Ga., §2039.   Redfield on Railways, 232, 240. Ang. on Car., 75, 131, 134.

Nought excuses them but the act of God, or of public enemies.   Story on B., 489, 490, '1, '2, Code of Ga., §2039.   1st Dev. and Bat. (N. C.) R., 273: and fire caused by human means is no excuse, Hollister vs. Nolen, 19th Wend., 238. Fish vs. Chapman & Ross, 2d Kelly, (Ga. R.) 357.

This liability commences on receipt of the goods.   Story on B., §509, Code of Ga., §2043; Ang. on Car., §131; nor can it be varied by notice or special acceptance, Code of Ga., §2041, and Fish vs. Chapman, *ante*, and Hollister vs. Nolen, *ante;* York Co. vs. C. R. R., 3 Wallace, (U. S.) R., 107, 112, 113. And this is so in North Carolina, Backhouse vs. Snead, 1st Murphy R., 173, and Revised Code of North Carolina, although this is immaterial, as the contract was made in Augusta, Ga.

The *onus* of showing, exercise of ordinary care, &c., in case of special contract, is on the carrier.   Berry, *et al.* vs. Cooper, 28th Ga. R., 543.

WALKER, J.

1. An Express Company which pursues continuously, for any period of time, the business of transporting goods, packages, etc., is a common carrier; and in case of the loss of goods entrusted to it to be carried, the presumption of law is against it; and no excuse will avail it, unless the loss was occasioned by the act of God, or public enemies of the State. Rev. Code, Sec. 2040; Fish vs. Chapman, 2 Kelly's Rep., 349.   At common-law a carrier is in the nature of an insurer, and is bound to keep and carry goods entrusted to his care safely, and is liable for all losses, and in all events, except those caused by the act of God, and the king's enemies.   This is the law, it is believed, in every State in the Union.   Ch. on Car., 34, and note.

2. The responsibility of the carrier commences with the

delivery of the goods either to himself or his agent, or at the place where he is accustomed or agrees to receive them. Rev. Code, Sec. 2044. In this case, the witnesses do not agree on the question of delivery, but that was a question for the decision of the jury, and they found in accordance with the weight of the evidence; in accordance with the receipt which acknowledged the reception of the goods. It is very clear that the agent of the Company agreed to receive the goods at the place where they were, in the depot, and the agent of the plaintiff ceased all control of them from the time of the giving of the receipt. There was sufficient evidence to warrant a finding that the goods had been delivered to the carrier, and when the liability commences by a delivery, it continues until the delivery of the goods at the point of destination. Code, 2044.

3. It is insisted that the receipt given in this case was evidence of such an express contract as is contemplated by the Code, Sec. 2043. Perhaps a more inviting field for legal disquisition than this, could not be found. The books, especially of late years, are filled with cases bearing upon this question. One who has leisure, and desires to explore this doctrine, can be gratified by examining Angel's and Chitty's works on Common Carriers; Story and Edwards on Bailments; the notes in Smith's leading cases to Coggs *vs.* Bernard, and the cases in 19 and 21 Wendell, and 2 Hill's N. Y. Reports.

Our Code has incorporated the rules of the common-law as expounded in Georgia, in Fish *vs.* Chapman, 2 Kelly, and with it we are satisfied. The learned annotator of Ch. on Car., p. 45, calls the opinion of Mr. Justice Nisbet, in Fish *vs.* Chapman, a "learned and thorough opinion," and quotes it almost entire as evidence of the common-law. "A common carrier cannot limit his legal liability by any notice given either by publication or by entry on receipts given, or tickets sold. He may make an express contract, and will then be governed thereby. Rev. Code, Sec. 2042. The carrier, then, cannot limit his liability by entry on receipts given, though he may make an express contract. This section intended to require the assent of the shipper to be given to any modification of the common-law contract of common carriers. The

mere acceptance by the shipper of a receipt with an entry on it, was not intended to be an express contract, for the carrier cannot by this, limit his liability. A carrier may adopt reasonable rules and regulations for his own safety and the benefit of the public, (Rev. Code, Sec. 2043 ;) such as requiring the nature and value of the goods delivered to him, to be made known, and any fraudulent acts, sayings or concealments by his customers, will release him from liability. Rev. Code, Sec. 2054 ; Ang. on Car., Sec. 235–6. In 1 Bell's Commentaries, p. 382, he says : "There seems to be only one point to which, legitimately, notices of carriers could be admitted, viz : the regulation of the consideration for risk. Saving always the power of making an *express* contract, the effect of a mere notice ought justly to be restricted to this point; as to which alone it is competent for a carrier to refuse employment."

The entry on the receipts in this case, can be regarded in no other light than as notices given by the carrier, and though it be considered that they were brought home to the plaintiff, yet they are not of that character, and did not relate to such "regulations" as he had a right to adopt of his own mere will, and bind shippers thereby. They did not relate alone to "the consideration for risk," and there is no pretence that the carrier was not correctly informed as to the nature and value of the goods entrusted to him. There were no fraudulent acts, sayings or concealments by his customer. It was a simple effort on the part of the carrier, by an entry on a receipt, to limit his legal liability ; nothing more, nothing less, and this the law says he cannot do. "For the law charges this person (the common carrier) thus entrusted to carry goods, against all events, but acts of God and enemies of the king. For though the force be never so great, as if an irresistible multitude of people should rob him, nevertheless, he is chargeable. And this is a politic establishment, contrived by the policy of the law, for the safety of all persons, the necessity of whose affairs oblige them to trust these sort of persons, that they may be safe in their ways of dealing ; for else these carriers might have an opportunity of undoing all

persons that had any dealings with them." Per Holt, C. J. Coggs vs. Bernard, 2 Lord Raym. R., 918." "It appears from all the cases for one hundred years back, that there are events for which the carrier is liable, independent of his contract. By the nature of his contract, he is liable for all due care and diligence; and for any negligence, he is sueable on his contract. But there is a further degree of responsibility by the custom of the realm, that is, by the common law, a carrier is in the nature of an *insurer*." Per Lord Mansfield in Howard vs. Pittard, 1 T. R., 33, (1785.) "His responsibility is established with a view to public policy, to the reward which he receives, to his character as an insurer, and to the terms of his contract, express or implied." Edwards on Bail., p. 454. "The extent of the carrier's liability, does not depend on the terms of his contract; it is declared by law when he is charged as a carrier; it is on the ground of an obligation imposed upon him by law." Ib., 466–7. His liability being fixed by law, he cannot lessen it at will by notice brought home to the opposite party, but he may make an express contract, and will then be governed thereby. Having become liable for the custody of the goods, it devolved on defendant to show such facts as will relieve it from this liability; otherwise, it will be held accountable. In Berry vs. Cooper, 28 Ga. R., 543, the Court below charged the jury, that if the cotton was received by the carrier under a contract exempting him from loss by fire, and the cotton was burnt, still the plaintiff was entitled to recover, unless there was no negligence on the part of the carrier, and the *onus* of proof of this fact lies on the carrier. This charge was excepted to, and this Court held that it was right; and the Court say : " To place the *onus* upon the plaintiff, would be to deny him all redress. * * Let the carrier then prove the loss and the manner of the loss. Policy, as well as the safety of all concerned, demands the establishment of this rule," p. 551. This is conclusive, and establishes the doctrine, that in cases of express contracts, the *onus* of proving the facts necessary to relieve the carrier from the common-law liability for the loss of goods entrusted to him as such, devolves upon him, and not upon the shipper.

4. The reception of the goods to be carried, makes the carrier liable for their safe custody and transportation within a reasonable time; and if he would relieve himself from liability, he should by proof, show such facts as may be necessary for that purpose.   The charge requested by defendant's counsel as set out in the fifth ground of the motion for a new trial, was given with a qualification which the Court deemed necessary to make it applicable to the facts of the case.   We understand there is no difference of opinion as to the correctness of the general proposition contained in the request. Standing alone, it was not applicable to the facts of the case, and the Court might very properly have simply declined to give it in charge.

5. The Court is not bound to give in charge a general proposition, though it be the law, unless it be applicable to the facts of the case.   If such general charge be requested, he may either decline to give it, or he may modify or add to it so as to make it pertinent to the facts and the issue to be tried.   While the request to charge, with the addition made thereto by the Judge, is not perhaps as happily expressed as it might be, still we think it sufficiently clear to be understood, and to contain a correct legal proposition.   We understand the whole charge taken together, to mean that so far as a common carrier is concerned, the mere acceptance by a shipper of a receipt containing limitations of the carrier's liability, would not make an express contract between the parties, and thereby relieve the carrier from the extraordinary diligence imposed upon him by law.   Thus understanding the charge of the Court below, we concur with him.

This is a hard case, and I have felt a strong desire to protect this Company against the payment of this claim, if I could do so on legal principles.   If the jury had found that an express contract was made, by which the Company was not to be liable as common carriers, but only as ware-housemen, and only took charge of the goods as such, until such time as means of transportation could be procured, I think I would have been better satisfied with the verdict.   But that was a question for them, and I cannot say that the verdict is deci-

dedly and strongly against the weight of evidence. This issue having been found against the defendant, I think, under the law, it is accountable for the goods burned ; and the whole Court being of that opinion, the judgment of the Court below is affirmed. See also the cases of Purcell and Barnes against the same defendant decided during this term.