C. WALLACE, Superintendent Western & Atlantic Railroad, plaintiff in error, *vs.* WILLIAM C. SANDERS, defendant in error.

A suit was brought against the Western & Atlantic Railroad for the loss of personal property delivered to them at Dalton for transportation to Atlanta, and plaintiff proved that the property sued for was put on board the railroad cars, and was lost. The evidence for the defense consisted, in part, of an original receipt, produced by plaintiff, or notice, as follows: "Received of Mr. W. C. Sanders, (stating the property,) for shipment to Atlanta, at his own risk," and the testimony of the agent, which showed that, at the time, General Johnston's army was in Dalton, and the cars were taken by the military at their pleasure, and that shipment of private freight was generally understood to be at the owner's risk, and that all shippers knew it was not uncommon for the military to take the cars and throw such freights out, and that he believed defendant knew of the risk, and that he had to take it. It further appeared that the car loaded with plaintiff's goods at Dalton, consisting of a wagon, two mules and a horse, was

Wallace *vs.* Sanders.

found next morning in Atlanta, loaded with Confederate horses, a part of the wagon found lying near the depot at Dalton. Upon this statement of facts, the Judge charged the jury that the stipulation in the receipt, that the property was shipped at owner's risk, was no protection to the road unless the property was proven to have been taken by the Confederate army from the cars, and the jury found for the plaintiff, and the Court below refused a new trial:

*Held*, That the charge of the Court, under the facts, was too narrow a view of the law providing for express contracts by railroads; that while the general proposition of law laid down is in the language of the Code, there were facts in this case arising not only from the presence of an army, but the character of the receipt given, and the evidence of the agent as to plaintiff's knowledge and consent thereto, which ought to have been submitted to the jury under the evidence, to say whether or not he had knowledge of the contents and consented thereto; for this would limit the liability, if the jury believed from the evidence that it was an express contract. And whether it was or was not, was a fact for the jury, which ought to have been submitted to them under all the evidence in this case.

*Held, again*, If the jury were satisfied, from the evidence, that the car was taken by a superior force, which the defendants could not resist, still it was the duty of the Court to instruct the jury touching the requirements of care of the goods by the defendants after they were thrown out of the car, or the existence of such circumstances as prevented its exercise, and that the jury ought to have the whole matter fully before them, upon the law applied to the facts; 1st, as to whether there was an express contract between the parties; and, 2d, as to the care taken, if any, or reason why it was not done by the defendant or its agents, relative to the goods, if the jury believed they were thrown off by the military authorities.

Common-Carriers.  King's Enemies.  Diligence.  Before Judge HOPKINS.  Fulton Superior Court.  November Term, 1869.

This cause is reported in the opinion.  It was tried before Judge Pope in November Term, 1869.  A new trial was subsequently refused by Judge Hopkins.

MYNATT & DELL, for plaintiff in error.  As to express contract: 39th Ga. R., 617.  W. & A. R. R. not embraced by section 2042 R. Code: 37th Ga. R., 240.  Before Code, common-carrier might limit liability: 21st Ga. R., 526.

WILLIAM EZZARD, for defendant. Common-carrier cannot limit liability by receipt: R. Code, sec. 2042.

LOCHRANE, C. J.

This was an action brought by Sanders against the Western & Atlantic Railroad for the loss of personal property, consisting of two mules and one horse and wagon, alleged to have been delivered to the railroad at Dalton for transportation to Atlanta. The plaintiff proved the property was put on the cars and was lost.

The original receipt, which was produced, upon notice, is as follows:

"Received of Mr. W. C. Sanders, one horse, two mules and one wagon, for shipment to Atlanta, at his own risk.
    (Signed)                JOHN F. REYNOLDS, Agent.
*Dalton, February* 22*d,* 1864."

And Reynolds, testified, among other things, that the army of General Johnston was at Dalton at the time; that the military took the cars and did as they pleased about the control of the road, seizing anything they wanted, without any consultation with the officers of the road; that shipment of private freight was generally understood to be at the owner's risk; that all shippers knew the risk; that it was not uncommon for the military to take the cars and throw freight out; that he is satisfied the defendant in error knew of the risk, and that parties shipping had to take the risk.

It appeared the wagon was found the next morning near the depot at Dalton, and the same car in which this freight was, was found next morning at Atlanta, full of horses belonging to the military authorities.

The Court, under these facts, charged the jury that the stipulation in the receipt, that the property was shipped at the owner's risk, was no protection to the road unless the property was proven to have been taken by the Confederate

Wallace *vs.* Sanders.

army from the cars. The jury found for the plaintiff, and a motion for a new trial was made upon exception to the charge of the Court, and that the jury found contrary to the evidence and law, which was overruled.

And the main and controlling question of this case, in our judgment, is as to the charge of the Court. We have laid down the rule, over and over again, that, when no rule of law has been violated in submitting the case to the jury, and there is evidence to support the verdict, and the Court below has refused a new trial, we will not interfere. But we must be satisfied that the Court, in submitting the law of the case, has done it fairly and intelligibly to the jury.

And under the facts in this case, we are not satisfied with the charge of the Court. It withdrew from the consideration of the jury all the benefits of defense arising under the principle of express contract, that the goods were shipped at the owner's risk. If we go back to this occurrence and take into consideration the condition of the public affairs at Dalton, an army in the locality, and the consequent derangement of private business, we can well see why the road should require the shipper to take the risk of the transportation, and why the strict rules of law should be disregarded in the light of existing circumstances at the time. There is evidence here that he did not know the general terms upon which private freight was shipped. There is evidence that he loaded the car himself; that this receipt, taken out of his possession, was brief, pointed, and express that the shipment was at his risk. Section 2042 of the Code provides: "A common-carrier cannot limit his legal liability by any notice given, either by publication or by entry on receipts given, or by tickets sold," etc. But there is something in the character of this receipt that might authorize the presumption of actual knowledge of the contents of it. In 37 *Georgia Reports*, the Court regarded a "fair opportunity to understand the terms of a contract" as governing the parties, the distinction being clearly defined that the railroad cannot *by any act of*

Wallace *vs.* Sanders.

*its own* limit its liability.   But, if the act has the consent of the other party, then the rule changes and the stipulation becomes a contract, governing the parties in the particular case.

Now the doctrine summed up in 39 *Georgia Reports*, 635, is "that the carrier may, with the assent of the owner, make a special contract, in the face of the receipt, which will limit his liability." And this general proposition is the universally acknowledged rule of law sanctioned by all Courts, State and Federal.

The charge of the Judge below, under the facts of this case, upon the naked doctrine of the Code, section 2042, was too narrow and limited.  The written receipt given, its brevity and statement, taken with the then condition and surrounding circumstances, afforded something for the jury to consider as to whether its terms had been assented to, something which went to shew he had actual notice of its contents ; something to show that there was a fair opportunity to understand its terms; something which imported knowledge and consent.  But taken with the testimony of Mr. Reynolds, and his assertion of the general understanding of all, and that this shipper knew that shipments were only made at the risk of the owner, we are of opinion that the Court ought to have submitted the question in this aspect to the jury.

Again, as to the question of liability growing out of the act of the military.  If the jury were satisfied that the car was taken by a superior force, which neither the road nor its agents could resist, we are nevertheless of opinion that the defendants below ought to have shown something more than is here shown by the record touching the care of the goods after such act by the military, or account for the reasons out of which this omission was occasioned.  Conceding the fact that this was a special contract at owner's risk, still there was devolved upon the defendants proper care over the property while on the cars and while remaining in their custody, or the existence of such circumstances as prevented its exer-

cise. We appreciate the derangements of business in the midst of an army, and the fact that where law ceased to give protection the ordinary rules may be relaxed, yet the jury ought to have the matter fully before them. If a watchman was there, what was done to take care of the property when thrown off, or if not there, why? There may or may not be ample and satisfactory reasons; but we are of opinion such should be made to appear. We reverse the judgment of the Court below that the whole case may go to the jury under the charge of the Court upon the law.