# CENTRAL OF GEORGIA RAILWAY COMPANY *v.* CITY MILLS COMPANY.

1. A common carrier can not limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract releasing him from liability not arising from his negligence, and will then be governed thereby.

2. A milling company which did a large amount of shipping over a railroad, with the assent of the railroad company, prepared and had printed for itself a blank form of shipping receipt which included the words, "as per conditions of Company's bill of lading;" and the agent who prepared the form testified that he intended to make it subject to the conditions in the company's regular bill of lading, that the meal which was involved in the controversy was loaded on a car by the milling company, and the receipt made out by its agent and presented to the agent of the railroad company for signing, that it was his intention as representing the milling company, in making out every paper or contract of shipment, that it should be subject to the terms and conditions of the company's standard bill of lading, and that it was so expressed in the paper and so understood by him, but that he had never read one of the bills of lading, although he had seen thousands of them. One

of the conditions contained in the company's ordinary and regular bill of lading for the transportation of goods other than cotton, live stock, and one or two special kinds of shipments, contained the stipulation, that "no carrier shall be liable for loss or damage not occurring on its portion of the route, nor after said property is ready for delivery to the consignee." *Held*, that it was error to charge the jury, "Did both of the parties, the plaintiff and the defendant, understand by that, at the time this receipt was signed, that liability of the defendant company was limited to its own line, and until delivery to the connecting carrier in good order? Did they both understand it that way? Was that the contract between them?" Such a charge was calculated to leave the jury to infer that although the shipper may have deliberately and expressly adopted the conditions of the regular bill of lading as a part of the contract, intending to make the shipment subject thereto, and although it may have had ample opportunity for knowing what they were, yet if its agent did not understand or have in mind this particular condition at the time of the shipment, it would not be a part of the contract.

Argued May 23,—Decided August 9, 1807.

Action for damages. Before Judge Freeman. Muscogee superior court. August 4, 1906.

The City Mills Company brought suit against the Central of Georgia Railway Company, alleging that it made a shipment of certain meal from Columbus, Georgia, to Jacksonville, Florida, and that the defendant failed to deliver the freight at the point of destination. The bill of affreightment was as follows:

"Received from City Mills Company, Columbus, Ga., 11, 20, 1902.

"By C. R. R. Co. By Steamer—In apparent good order, the articles named below, to be delivered in like good order, without unnecessary delay.

"To Peacock, Hunt & West Co. At Jacksonville, Fla.

"Car—Marks L. & N. 4863.

"As per conditions of Company's Bill of Lading. Shipper's Order Notify."

Then followed a description of the property, weight and rate; and the paper was signed by the agent of the railway company.

The only part of the defense which it is necessary to mention is that the defendant company had no line of railroad running from Columbus to Jacksonville; but that, as was well known to the plaintiff when it delivered the car to the defendant, after loading it, the defendant would deliver it at Albany, Ga., to a connecting

line of railroad which would transport it from that point to Jacksonville; that a memorandum receipt was given which is set out above, and which stipulated that the car was received to be transported by the defendant as per conditions of the company's bill of lading, one of which was that the defendant agreed to deliver the car to its connecting carrier on the route to its destination, and when it did so then all further liability for the shipment should cease as to this defendant; that it did transport the car to its terminus at Albany, and there delivered it in good order to the connecting carrier; and therefore it contends that its liability ceased.

The secretary and treasurer of the plaintiff testified, among other things, as follows. "The receipt signed by the agent of the railway company for this shipment was on the form prepared by the City Mills Company. The receipt was made out by the plaintiff and presented to the agent of the railway company, Mr. Feagin, to be signed. The receipt was made out by myself, and it was in my handwriting. This form was used at the direction of the railway company and with their approval. It was a matter of convenience both to the railway company and to us. This receipt is not signed by me or the City Mills Company, and no other bill of lading was shown or read to me. I have seen thousands of the Central of Georgia Railway Company's bills of lading, but I never read one of them. I do not know whether they are all alike. The form of the paper on which we have sued states that it was subject to the terms of the bill of lading. I will say that it was my intention, as representing the City Mills Company, in making out every paper or contract of shipment, that it was subject to the terms and conditions of the company's standard bill of lading, and it was so expressed in the paper, and I so understood it. The regular bill of lading of the company was not presented to me. I do not know the verbiage of the bills of lading. I never read it at all. We have always used this other form, and the question had never arisen. This form of paper sued on I had printed myself, and the verbiage of the contract reads, 'as per conditions of Company's bill of lading.' Candidly, I had never read a bill of lading of the defendant railway company. I have seen these bills of lading as I have others, but, as I have stated, I did not have occasion to read them. I can not say whether the regular form of bill of lading now shown me is the kind referred to in the receipt

or contract of shipment attached to our suit. I presume, of course, that the contract prepared by me for the City Mills Company refers to their regular bill of lading. I do not know how many they have. . . . I certainly did know that the bill of lading contained the terms and conditions for the protection of the company in shipments, but I was not aware of those conditions nor what they were. . . It was my intention, when I made out that receipt on the City Mills Company paper, and which I had prepared, to make it subject to the company's bill of lading. The bill of lading referred to was the company's regular shipping bill of lading. It was my object and intention to make it refer to the company's regular bill of lading, but I never read the conditions."

The agent of the defendant company testified, among other things: "The railway company at that time issued several different bills of lading. The one handed me is the one they used in contracting and receipting for general merchandise. Then we have a form that applies exclusively to live-stock; then we have two cotton forms of contract, one a domestic and one a foreign shipment. We have a general form for miscellaneous articles, which includes nearly everything except cotton, live-stock, and household goods. It is my opinion that the general bill of lading, or standard bill of lading, is the one referred to in the receipt of the City Mills Company for the shipment of these goods. The receipt issued on the City Mills Company's form containing the words, 'as per conditions of Company's bill of lading,' refers to the form of bill of lading handed me, which is the regular bill of lading of the company. . . So far as I know, this receipt was not signed either by Mr. Baird or the City Mills Company. . . The bill of lading referred to carries the condition of the contract of shipment. . . If household goods were shipped, then the rate and value limitation would apply, but the condition as to the limiting liability to the end of the company's line is a general limitation that applies to all shipments. These conditions are not changed." The form of the defendant's bill of lading introduced in evidence contained the following clauses. "The railway company agrees to carry to destination the goods shipped, if on its own road, or otherwise to deliver to another carrier on the route to said destination. . . In consideration of the rate charged under the conditions of this bill of lading, it is mutually agreed as to each carrier sever-

ally, but not jointly, of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, on the face or back thereof, all of which are agreed to by the shipper as owner, or agent for the owner, and accepted for himself or his assigns, as just and reasonable." One of the conditions on the back of the bill of lading was as follows: "No carrier shall be liable for loss or damage not occurring on its portion of the route, nor after said property is ready for delivery to consignee."

The jury found for the plaintiff $111.22; and interest at 7 per cent. from December 2, 1902, to February 5, 1906, $24.65, making a total of $135.87. The defendant moved for a new trial on the general grounds, and also because the court charged as follows: "What conditions, from the evidence in this case, were referred to by the words, 'As per conditions of company's bill of lading?' Did both of the parties, the plaintiff and the defendant, understand by that, at the time this receipt was signed, that liability of the defendant company was limited to its own line and until delivered to the connecting carrier in good order? Did they both understand it that way? Was that the contract between them? You look to the evidence and you decide what the truth about that matter is." The motion was overruled, and the defendant excepted.

*Charlton E. Battle*, for plaintiff in error.

*J. H. Martin* and *A. W. Cozart*, contra.

LUMPKIN, J. "A common carrier can not limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract, and will then be governed thereby." Civil Code, § 2276. As to contracts seeking to waive the results of negligence as a common carrier, see *Central Railway Co.* v. *Hall*, 124 *Ga.* 322. The express contract referred to above may be signed by the parties, but is not obliged to be so. The mere acceptance of a bill of lading or a ticket which contains a limitation upon liability will not amount to an express contract. *Boyd* v. *Spencer*, 103 *Ga.* 828; *Southern Express Co.* v. *Newby*, 36 *Ga.* 635. Whether an express contract has been made, limiting liability, in the absence of any

signature of the shipper or his agent, is generally a question for the jury, if there be evidence tending to show such a contract. *Southern Express Co.* v. *Purcell,* 37 *Ga.* 103; *Wallace* v. *Matthews,* 39 *Ga.* 617; *Wallace* v. *Sanders,* 42 *Ga.* 486, 490. The presiding judge charged the jury as follows: "Did both of the parties, the plaintiff, and the defendant, understand by that, at the time this receipt was signed, that the liability of the defendant company was limited to its own line and until delivered to the connecting carrier in good order? Did they both understand it that way? Was that the contract between them? You look to the evidence and you decide what the truth about that matter is." On looking to the evidence it appears that the plaintiff's agent testified that the plaintiff itself prepared and had printed the form which was used. It was not a blank prepared by the railroad company and signed by its agent and delivered to the shipper; but the agent of the latter himself made out the receipt in his own handwriting and presented it to the agent of the railroad company to sign. The car was furnished by the company and loaded, closed, and fastened by the plaintiff before being delivered to the railroad company. The shipment was made by "shipper's load and count." The plaintiff knew that the defendant did not have a line of railroad to Jacksonville, and that it was necessary that the car should be transported over a connecting line in order to reach its destination. It was not a matter of haste or of mere acceptance of a receipt on the part of the plaintiff, but of deliberation and preparation. The plaintiff voluntarily placed in a receipt prepared by it a statement that the shipment should be "As per conditions of Company's bill of lading." Its agent testified that he knew that the bill of lading referred to contained terms and conditions for the protection of the company in shipments, but he did not know what those conditions were. Nevertheless, without taking the trouble to inform himself, though he testified that he had seen thousands of the bills of lading, he placed this stipulation on the face of the receipt, and induced the railroad company to sign it, with such reference to the bill of lading as an integral part of it. He also testified that it was his intention, as representing the plaintiff, in making out every paper or contract of shipment, that it should be subject to the terms and conditions of the company's standard bill of lading; that such was his intention when he made

out the receipt relied on; and that the bill of lading referred to was the company's regular shipping bill of lading; but that he never read the conditions thereof. If the shipper deliberately prepared a contract for the railroad company to sign, and himself placed in it an adoption of the conditions of the company's regular bill of lading, with the express assent of the company, and with the purpose of binding the shipper thereby, and thus induced the railroad to accept and use it, instead of using the regular bill of lading, it would be doing violence to the most fundamental principles of contracts and good faith between parties to allow the plaintiff afterwards to say that he was not bound by the conditions of the company's bill of lading because the shipper's own agent did not take the trouble to know what he meant by or included in the contract which he himself prepared. There is no pretense that he did not have ample opportunity to know what the conditions were before and when he adopted them as a part of the receipt which he was preparing. We think the charge of our brother of the superior court might have led the jury to believe that, although it may have been intended and expressly agreed that the shipment should be subject to the conditions of the company's bill of lading, yet if the plaintiff's agent, at the time of the shipment, did not understand the contract which he had previously prepared in blank and then filled out, and thus prepared for the other party to sign, however ample opportunity he may have had for understanding it, or however negligent it may have been not to understand it, nevertheless the plaintiff would not be bound by it.

It was contended by counsel for the plaintiff that it was not certain that the form of the bill of lading which was introduced in evidence was the one referred to in the receipt. But while at one point in his evidence the plaintiff's agent did make use of the expression, "I can not say whether the regular form of the bill of lading now shown me is the kind referred to in the receipt or contract of shipment attached to our suit," he immediately added, "I presume, of course, that the contract prepared by me for the City Mills Company refers to their regular bill of lading," and at another time stated that the bill of lading referred to was the company's "regular shipping bill of lading."

*Judgment reversed. All the Justices concur.*