## 1469.  SOUTHERN RAILWAY CO. *v.* FRANK & CO.

1. Where a shipper prepares and sends to a railway company, with his shipment of goods, a shipping ticket containing directions that the goods be shipped to a certain point, "as per condition of company's bill of lading," and the company signs a receipt for the goods upon these terms, and there is a standard form of bill of lading familiar to both parties, an express contract of shipment is created, and the terms and conditions expressed in that bill of lading become a part of the contract.

2. Where a carrier makes a through contract of shipment, he is liable for loss or damage accruing to the goods from initial point to destination, except in so far as this common-law liability is limited by the terms of the express contract; and if loss or damage occurs, the burden is on him to show that the loss or damage was within the agreed exception and was not occasioned by his own negligence.

   (a) The presumptions arising where a shipment is lost or damaged discussed.

3. Where a carrier issues a through bill of lading for goods consigned to a point not on its own line, and expressly contracts that it shall not be liable for loss or damage not occurring on its portion of the route, and the route is selected and designated in the contract, and the carrier, instead of forwarding the goods by this route, selects another carrier to complete the transportation, and damage occurs, the initial carrier is responsible, and can not set up the limitation expressed in the contract, to defeat a recovery.

Action for damages, from city court of Savannah—Judge Freeman. October 9, 1908.

Argued December 11, 1908.—Decided February 9, 1909.

The facts of the case are practically undisputed. The plaintiffs desired to ship certain goods from Savannah, Georgia, to Bryant's White Bluff, Georgia, on the Ocmulgee river, above Abbeville. They made out duplicate shipping tickets for the goods and delivered them to the defendant, the carrier, as shipping directions.

The ticket recited that the goods were to be taken by the defend-ant "as per condition of company's bill of lading." One of these tickets was kept by the carrier, the other was signed by its agent and returned to the shipper. The shipping directions were as follows: "Consignee, T. S. Wilcox; destination, Bryant's White Bluff; via Ocmulgee depot, care of Garbutt's boat." The shipper prepaid the freight to destination. The bill of lading which was afterwards issued contained similar statements as to route and destination. It was substantially in the same form as the bill of lading set out in the report of the case of *Atlantic Coast Line R. Co.* v. *Henderson,* 131 *Ga.* 75 (61 S. E. 1111). It contained a condition that "No carrier shall be liable for loss or damage not oc-curring on its portion of the route." Ocmulgee depot was a sta-tion on the defendant's line. The goods were delivered to the carrier on September 22, 1904; on September 27 the defendant's agent at Lumber City (just across the river from Ocmulgee depot, we infer) caused the goods to be sent on to Helena, the point of junction of the defendant's railway lines with those of the Sea-board Air-Line Railway, that they might be carried over the lines of the latter company to Abbeville, Georgia, for the reason, stated by the agent, that Bryant's White Bluff is above Abbeville and the boat from Ocmulgee depot does not go up as high as Abbeville. There was probably a temporary suspension of transportation by river between these points, as it appears elsewhere in the record that Garbutt's boat ordinarily took goods from Ocmulgee depot to Bryant's White Bluff. After being lost for several months, the goods were finally reported as having arrived at destination on March 8, 1905. The plaintiffs then ordered the defendant to have the goods returned, and soon afterwards they received the goods back at Savannah, the delivery being made by the Seaboard Air-Line Railway. Upon being received back at Savannah, the goods were found to be badly damaged, not only from having been ren-dered less salable through the delay, but also from the fact that rats had burrowed into them and one of the rats had died and its dead body had been left in among the dry-goods for several months. There was no dispute as to the amount of damage; and the whole case turned upon the question as to whether the defend-ant was liable. The jury found for the plaintiff.

*Osborne & Lawrence,* for plaintiff in error.

*Garrard & Meldrim,* contra.

POWELL, J. (After stating the foregoing facts.)

1. The preparation by the plaintiff of the shipping ticket, reciting that the goods were to be shipped "as per condition of company's bill of lading," and the issuing of the usual bill of lading under that request, made an express contract, binding both parties. to the terms of the bill of lading. *Central Ry. Co.* v. *City Mills Co.,* 128 *Ga.* 841 (58 S. E. 197). The proper construction of the bill of lading is that it is a through contract of shipment, binding the initial carrier to deliver to destination, but containing an express agreement relieving it from liability for damages occurring on the lines of the other carriers, who were to complete the shipment. *Atlantic Coast Line R. Co.* v. *Henderson,* 131 *Ga.* 75 (61 S. E. 1111).

2. There was no direct proof as to how, when, and by whom the damage was done. The question, therefore, becomes largely one of presumption. The carrier having made a through contract. of shipment, upon proof of loss or damage the burden was upon it to show that the loss or damage was occasioned within the exception agreed on in the contract, that is, beyond its own line, and also that its own negligence did not contribute thereto. Civil Code,. §2265. In case the goods have never arrived at destination and are in legal contemplation lost, the presumption is that the initial carrier lost them, until it shows that it delivered the goods to a connecting carrier in good order. *So. Ry. Co.* v. *Montag,* 1 *Ga. App.* 650 (57 S. E. 933). If the goods reach destination over the lines of a connecting carrier, and are then for the first time discovered to be damaged, the presumption is not that the initial carrier did the damage; because there is a presumption that the last connecting carrier would not have received them if they had not been in good order. *Ohlen* v. *A. & W. P. R. Co.,* 2 *Ga. App.* 323 (58 S. E. 511). This presumption against the last connecting carrier is not to be indulged if it appears in the proof that the goods were even partially damaged while in the possession of the initial carrier; for here, since the fact is known that the goods were not in fact in good order when delivered to the last connecting carrier, the basis for the presumption that it received them in good order no longer exists. *Cincinnati, N. O. & T. P. Ry. Co.* v. *Pless,* 3 *Ga. App.* 401 (60 S. E. 8). Thus it will be seen that the usual presumptions arising in such cases are only prima facie pre--

sumptions, and lightly yield in favor of the inferences to be drawn from the disclosure of actual facts.    Compare *G., F. & A. Ry. Co.* v. *Stanton,* ante, 500 (63 S. E. 655).    If there were nothing else but the presumptions arising from ignorance of the actual facts, to show how and when the damage came about, it might be legitimate for us to presume, as we are requested to do, that the Seaboard Air-Line Railway, the carrier last found in possession of the goods, did the damage; but as the goods were at destination, Bryant's White Bluff, not on the line of the Seaboard Air-Line Railway, on March 8, and were redelivered at Savannah a few days thereafter, and as the damage is shown by the testimony to have been in progress for several months, it would not be permissible, under the showing, to presume that the last carrier received the shipment in good order.

3.    We think, however, the whole case turns on this fact: the initial carrier, under the specific terms of the present contract, was not exempted from any liability for shipment from Savannah to destination, except as to damages accruing to the goods while in the possession of Garbutt's boat; and it is not shown that Garbutt's boat was ever in possession of the goods.    The instructions under which the defendant company received the goods, as well as the express terms of the bill of lading, were that the goods were to be carried by the defendant to Ocmulgee depot, and there delivered to Garbutt's boat.    The contract, it is true, exempted the initial carrier for damage done by the connecting carrier, but it also designated what connecting carrier was in the contemplation of the parties.    It may be said in reply to this that when the goods arrived at Ocmulgee depot it was found to be impracticable to deliver them to Garbutt's boat, as it was not running between Ocmulgee depot and Bryant's White Bluff at that time.    Did this authorize the defendant, without consulting the plaintiffs, to select another agent, through whom it would complete its contract of through shipment, and to hold itself exempt from liability for damages done by this new agent, to whose interposition in the matter the plaintiffs had never consented?    If, when delivery by the means contemplated and expressed in the contract had proved impracticable, the defendant had consulted the plaintiffs, they might have said, "Carry the goods yourself to Hawkinsville, where your

37

·own 'line again touches the river, and there ship them by boat."
We will not undertake to suppose other directions they might have
given. It is sufficient to say that the plaintiffs never agreed that
the goods should be shipped over the Seaboard Air-Line Railway.
It may be that if the defendant had stated the matter to the plain-
tiffs; they would have agreed for the shipment to be completed by
way of the Seaboard Air-Line Railway; on the other hand they
might have said, "We are not willing to trust our goods to that
carrier; its property may be in the hands of a receiver in a short
while," as indeed turned out to be the case. In fine, the initial
carrier having made a through contract of shipment, and not hav-
ing shown, by any valid presumption or otherwise, that the damage
was done within the agreed exception to its liability, nor that its
own negligence did not contribute thereto, and the amount of the
damage having been uncontested, the verdict was demanded. Hav-
ing made a deviation of the shipment from the route agreed on,
the defendant placed upon itself full liability for all the loss and
damage, wherever incurred, pending the transportation to final
destination.                              *Judgment affirmed.*