MARKS & SHIELDS et al., Appellants, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY et al., Appellees.

**CARRIERS:** Non-Diversion of Shipment. A carrier operating under a written, authorized, interstate, live-stock-shipping contract, which provides for limited common-law liability, is not guilty of *diverting* the shipment, and thereby subject to full common-law liability, by unloading the stock for inspection at the stockyards on its line, nearest the state boundary, *in obedience to state quarantine regulations*, even though such unloading is in violation of the shipper's oral instructions, given prior to the signing of the contract.

**EVIDENCE:** Live-Stock-Shipping Contracts. A written, live-stock-shipping contract, complete and unambiguous, may not be varied by prior oral shipping directions.

**CONTRACTS:** Statutory Regulations as Part of. Regulations made under authority of statute law may, *ipso facto*, enter into and become a part of a contract. So held as to a common carrier, in unloading stock for health inspection.

**LIMITATION OF ACTIONS:** Second Action as Continuance of Former Action. A shipper who is under contract obligation to bring damage actions within a stated time after loss, and who has consumed *such* time, and more, in the unsuccessful prosecution of an action in the name of the wrong party in interest, may not, within six months after such unsuccessful termination, institute and maintain an action in the name of the proper party, on the theory that the latter action is a statutory continuance of the first. (Sec. 3455, Code, 1897.)

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

DECEMBER 14, 1918.

ACTION for damages on account of the loss of a carload of horses by fire while in transit. A verdict in favor of the defendant was directed by the court, and plaintiff appeals. —*Affirmed.*

*Mayne & Green,* for appellants.

*Saunders & Stuart, F. W. Sargent;* and *J. H. Johnson,* for appellees.

STEVENS, J.—I. On or about September 13, 1913, the Omaha Horse & Mule Company, of South Omaha, Nebraska, as agents of plaintiff, delivered 24 head of horses and one mule to the defendant for shipment to E. W. Shields, as consignee, under a uniform live-stock-shipping contract, approved by the Interstate Commerce Commission, to Underwood, Iowa, a small station situated on defendant's line, a short distance east of Council Bluffs. Prior to the execution of the shipping contract, the agent of plaintiff prepared written directions to the Chicago, Milwaukee & St. Paul Railroad Company for the shipment of stock over that line of railway; but later discovered that it had no train on Saturday evening, and the route was changed, and the shipment made over the road of defendant. The horses and mule were loaded into a car, taken to Council Bluffs on Saturday evening, unloaded at the stockyards of defendant for inspection, and later reloaded in the same car, which, before it was moved from the loading chute, was destroyed by fire; and all of the horses were killed, or rendered valueless.

1. CARRIERS: non-diversion of shipment.

The shipping contract contained no provision for unloading the horses at Council Bluffs for inspection, but the quarantine regulations of this state require carriers to unload horses brought into this state from points west of the

Missouri River, at its yards nearest to the river, for inspection, unless copy of a certificate of health, showing a record of the mallein test, is attached to the waybill. It is conceded that no such certificate was attached to the waybill in this case, and that it was the duty of defendant to unload the horses in Council Bluffs for inspection. The evidence, without dispute, showed that a representative of the South Omaha Horse & Mule Company made out a billing order, at the office of the Union Stockyards, to the Chicago, Milwaukee & St. Paul Railroad Company, containing the name of the consignor, consignee, and destination of the proposed shipment, together with a notation to "feed at the U. S. Yards, Council Bluffs, and hold for inspection." Learning that the shipment could not be made over the Milwaukee on Saturday night, the name of defendant in the billing order was substituted for that of the Chicago, Milwaukee & St. Paul Railroad Company.

The contents of the billing order were telephoned to the agent of defendant in South Omaha, but the written order was never delivered to him; and later, the shipping contract in question, signed by both the agent of the company and the agent of plaintiff, was executed. A notation, "Stop this car at U. S. Yards at Council Bluffs for inspection," was written on defendant's waybill. After the arrival of the car at defendant's stockyards in Council Bluffs, and after the horses had been unloaded therefrom, plaintiff, for the first time, learned that the car had not been taken to the Union Pacific Stockyards, and he testified that he requested the agent of the defendant to remove it from its yards to the Union Pacific Stockyards, and that the agent refused to have this done. Whereupon, the horses were fed, cared for, and reloaded by plaintiff at defendant's yards.

The Union Pacific Stockyards were in charge of Dr. Hollingsworth, an assistant state veterinarian, and are lo-

cated southwest of the Union Pacific Transfer, in Council Bluffs, about 1½ miles nearer the Missouri River than defendant's yards, but not on defendant's line. Plaintiff claims that he had previously arranged with Dr. Hollingsworth to receive, inspect, feed, and care for the horses at the Union Pacific Stockyards; and this is given as the reason for desiring the horses taken to said yards. The shipping contract, among other provisions, contained the following:

"3. That the first party shall be exempt from liability for loss or damage to the person or persons and property covered by this contract, arising from derailment, collision, fire, escapement from car, heat, suffocation, overloading, crowding, maiming or other accidents or causes, unless the injuries arising from said causes are the direct result of negligence on the part of the carrier. .

"8. That in case of loss of any of the live stock covered by this contract from any cause for which the first party may be liable, payment will be made therefor on the basis of the actual cash value at the time and place of shipment, but in no case to exceed $100 for each horse, pony, gelding, mare or stallion, mule or jack; and in case of injury or partial loss, the amount of damage claimed shall not exceed the same proportion.

"15. That no suit or action against the first party for the recovery of any claim by virtue of this contract shall be sustainable in any court of law or equity, unless such suit or action be commenced within six months next after the cause of action shall occur; and should any suit or action be commenced against the first party after the expiration of six months, the lapse of time shall be constituted conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

All of the above provisions of the contract are pleaded and relied upon by defendant railway. Plaintiff contends that defendant forfeited its right to rely thereon, by de-

viating from the route orally directed and agreed upon, by taking the horses to the Rock Island, instead of to the Union Pacific Stockyards for inspection, and that, therefore, the common-law liability of defendant controls. No proof of negligence on the part of defendant was offered, nor was the origin of the fire shown.

The court below held:

(a) That the alleged prior verbal shipping directions were merged in the written contract, and that parol evidence thereof was inadmissible, and that, as the written contract did not direct defendant to unload the horses at the Union Pacific Stockyards, it was not required to do so; and

(b) That plaintiff's cause of action was not brought within the time required by the terms of the contract, and therefore could not be maintained.

It is not claimed by counsel for appellant that the written contract required defendant to unload the horses at the Union Pacific Stockyards for inspection, but some claim is made that a legal duty was imposed upon it to unload the horses at the stockyards nearest the Missouri River. The quarantine regulations, however, require the carrier, in lieu of a copy attached to the waybill of an inspection certificate of health and record of the mallein test on all horse shipments originating west of the Missouri River, to detain such stock for inspection at whatever suitable stockyards, or other enclosure, are nearest the state line within the state, on the railroad over which they are being shipped. It will thus be seen that the quarantine regulations did not require the defendant to unload the horses at the yards or enclosure nearest the Missouri River in Council Bluffs, but only at the yards or enclosure nearest the river upon its line.

That plaintiff had a right to contract with defendant to unload the horses at the Union Pacific Stockyards, for

feed and inspection, is not denied by counsel for defendant. Many courts have held that a deviation by the carrier from the route specified in the contract forfeits the right of the carrier to insist upon special provisions of the contract limiting recovery. *St. Louis, I. M. & S. R. Co. v. Caldwell,* 89 Ark. 218 (116 S. W. 210); *Southern R. Co. v. Frank & Co.,* 5 Ga. App. 574 (63 S. E. 656); *Cleveland, C., C. & St. L. R. Co. v. Schaefer,* 47 Ind. App. 371 (90 N. E. 502); *Saxon Mills v. New York, N. H. & H. R. Co.,* 214 Mass. 383 (101 N. E. 1075); *McKahan v. American Exp. Co.,* 209 Mass. 270 (95 N. E. 785); *Drake v. Nashville, C. & St. L. R. Co.,* 125 Tenn. 627 (148 S. W. 214); *Houston & T. C. R. Co. v. Kemendo* (Tex. Civ. App.) 131 S. W. 634; *St. Louis, B. & M. R. Co. v. True Bros.* (Tex. Civ. App.) 140 S. W. 837.

The contract in the case at bar was for a through shipment over the lines of the initial carrier. Without special agreement to the contrary, it was the duty of defendant to unload the horses at its yards in Iowa nearest the Missouri River, for inspection. This, the evidence shows, was done. As the contract for shipment contained no provision for deviation from its route, the defendant in no wise breached the same by unloading the horses at its yards in Council Bluffs, unless it was bound to follow the oral shipping directions referred to above.

**2. Evidence:** livestock-shipping contracts.

Oral negotiations between the shipper and the company, or directions for shipment over a particular route, made prior to the written contract, are deemed merged therein. The contract in the case at bar is complete in every detail, and wholly without ambiguity. Plaintiff's whole reliance is based upon the alleged oral directions, or agreement, made before the shipping contract was entered into. The contract, when made, was complete, and the law required the horses to be unloaded at the stockyards in the state of Iowa, on the line of defendant nearest the Missouri

**3. Contracts:** statutory regulations as part of.

River; and, under familiar rules, its terms could not be varied by parol. *West v. Steamboat Berlin*, 3 Iowa 532; *Hewett v. Chicago, B. & Q. R. Co.*, 63 Iowa 611; *Garden Grove Bank v. Humeston & S. R. Co.*, 67 Iowa 526; *Tallassee Falls Mfg. Co. v. Western R. Co.*, 117 Ala. 520 (23 So. 139); *Steidl v. Minneapolis & St. L. R. Co.*, 94 Minn. 233 (102 N. W. 701); *Sturges v. Detroit, G. H. & M. R. Co.*, 166 Mich. 231 (131 N. W. 706); *Richmond & D. R. Co. v. Shomo*, 90 Ga. 496 (16 S. E. 220); *Louisville & N. R. Co. v. Duncan & Orr*, 137 Ala. 446 (34 So. 988); *McElveen & Hardage v. Southern R. Co.*, 109 Ga. 249 (77 Am. St. 371); *Snow v. Indiana, B. & W. R. Co.*, 109 Ind. 422 (9 N. E. 702); *Wells Fargo & Co's. Exp. v. Fuller*, 4 Tex. Civ. App. 213 (23 S. W. 412); *Jones v. Pittsburgh & L. E. R. Co.*, (Pa.) 11 Atl. 608; *Loomis v. New York Cent. & H. R. R. Co.*, 203 N. Y. 359 (96 N. E. 748). This, the evidence of the alleged oral directions or agreement to unload the horses at the Union Pacific Stockyards tended to do; and it was, therefore, inadmissible. The provisions of the contract quoted above have been upheld by the Supreme Court of the United States; and, where an interstate shipment is involved, must be given effect by the state courts. The notation on the waybill was made by some agent or servant of defendant, for the use of the trainmen, and in no wise became a part of the written contract between the parties.

II.   Within six months after the loss occurred, Shields, named as consignee in the contract, brought an action against the defendant in the state court for the value of the horses and mule, which was, upon proper application, transferred to the Federal court at Council Bluffs, where it was tried to a jury, resulting in a special finding that same was not prosecuted in the name of the real party in interest. This action was commenced in the name of the copartnership, within six months

**4. LIMITATION OF ACTIONS: second action as continuance of former action.**

thereafter, but not within six months after the loss occurred. The copartnership referred to was comprised of E. W. Shields and M. L. Marks, who had, for several years, been engaged in buying and selling horses, under the above firm name and style, at South Omaha. Counsel for appellant argues that, under the provisions of Section 3455 of the Code, the pending action must be held to be a continuation of the former action, brought in the name of Shields. This section is as follows:

"If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first."

Notwithstanding the fact that Shields, at the time the former action was begun in his name, was a member of the plaintiff copartnership, they were separate and distinct entities. The cause of action sued upon must have arisen in favor of the copartnership, and not in favor of Shields. The six months' period within which action could be brought, under the terms of the contract, expired more than a year and a half before the petition in the pending case was filed. The prior action was, under the verdict of the jury, unauthorized. This is the ground upon which recovery was denied. No action was brought by a plaintiff entitled to maintain same for more than two years after the right to do so arose. The contract specifically provided that suit must be brought within six months after the loss. This clearly contemplated an action in the name of the person or party legally entitled to maintain the same. Surely, plaintiff was negligent in failing to prosecute its action within the time agreed upon. In our opinion, the present action, in which the parties plaintiff are not the same, can in no wise be treated as a continuation of the former, and that the court rightly held that no action was brought

within the time required by the contract, and that this is, therefore, barred by its terms. For the reasons indicated, the judgment of the court below must be, and is,—*Affirmed.*

Preston, C. J., Weaver and Gaynor, JJ., concur.