A. B. MURPHY et al., Appellants, v. BOARD OF SUPERVISORS et al., Appellees.

OCTOBER 25, 1927.

REHEARING DENIED FEBRUARY 11, 1928.

A. J. *Shaw* and *W. H. Bailey*, for appellants.

*Edward L. O'Connor*, County Attorney, and *Dutcher, Walker & Ries*, for appellees.

KINDIG, J.—This action was for a writ of mandamus, requesting that the board of supervisors of Johnson County ask the treasurer thereof to repay appellants, the plaintiffs below, certain taxes, in accordance with Section 1417, Code of 1897, which reads as follows:

"The board of supervisors shall direct the treasurer to refund to the taxpayer any tax or portion thereof found to have been erroneously or illegally exacted or paid, with all interest and costs actually paid thereon * * * ."

Historically, the facts are: Previously, appellants brought a proceeding in law against said county and Charles L. Berry, its treasurer, to recover a personal judgment for said wrongful  collection. Such litigation terminated unsuccessfully, for the reason that the said municipal subdivision and official were not personally liable therefor, and the remedy proper in the premises must be under said statutory enactment above quoted. *Murphy v. Berry*, 200 Iowa 974. Afterward, a petition was filed in this cause, stating that Iowa City has a population of more than five thousand, and in the designation of cities is catalogued as "second class," within the purview of Sections 758, Supplemental Supplement of 1915, and 1303, Supplemental Supplement, 1915, as amended by the Acts of the Thirty-eighth General Assembly, Chapter 355, containing the following provisions, respectively:

"Sec. 758. Cities of the first class and also cities of the second class having a population of five thousand or over, and which are traversed by a stream two hundred feet or more in width from shore line to shore line shall have full control of the bridge fund levied and collected as provided by law, and shall

have the right to use the same for the construction of bridges, culverts, and approaches thereto, repairing the same, and paying bridge bonds and interest thereon issued by such city, and shall be liable for defective construction thereof, and failure to maintain the same in safe condition as counties now are with reference to county bridges; and no county shall be liable for any such bridge or injuries caused thereby.''

''Sec. 1303. The board of supervisors of each county shall. annually, at its September session, levy the following taxes upon thè assessed value of the taxable property in the county: * * * 4. For making and repairing bridges, not more than five mills on a dollar; but such tax shall not be levied upon any property assessable within the limits of any city of the first class, and none of such bridge tax shall be used in the construction or repair of bridges within the limits of such city; provided that in counties having a bonded indebtedness of ten thousand dollars or over, the county board of supervisors may levy not to exceed seven mills.''

Flowing through said city was a river wide enough to come within the limitations above required. In due time, said board of supervisors, upon proper certificates of the council of said city, levied and caused to be collected for the years 1918 and 1919, respectively, a five- and a four and one-half-mill bridge tax against all property within the boundaries thereof. Upon collection of said ''taxes'' by the county treasurer, they were turned over to the treasurer of said city, and used in constructing and maintaining its bridges. Notwithstanding this, however, the county, in addition thereto, levied and collected for said years, respectively, a five- and a seven-mill tax on all property within said city, the proceeds of which were permanently retained by said county, and no part of it delivered to the city. Appellants and their assignors, being residents and taxpayers within the city, commenced this litigation to recover the income from the erroneous assessment above mentioned, in the manner and way suggested in the case of *Murphy v. Berry*, supra.

Many grounds of attack are set forth in appellees' motion to dismiss, the principal of which, however, is that the instant cause of action is barred by the statute of limitations, because not brought within five years. The correctness of this defense

is conceded to be true, were it not for Section 11017 of the Code of 1924. Material language thereof is:

"If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first."

"New one," as used in the paragraph above, relates to a second "action" based upon the same cause as the original. *Whalen v. Gordon*, 37 C. C. A. 70 (95 Fed. 305) ; *McDonald v. Jackson*, 55 Iowa 37. Moreover, the parties must be identical. *Marks & Shields v. Chicago, R. I. & P. R. Co.*, 184 Iowa 1352. On the one hand, appellants, to obtain a reversal, contend that the former "action" was against the county, and founded upon the recovery of taxes illegally collected. Further, they insist that the present effort is the same in substance, the only difference being in the remedy pursued. While appellees, in support of the district court's action, submit that formerly there was a lawsuit against the county, in its capacity as a municipal corporation, and the said Berry, as treasurer thereof, demanding personal judgment against each. Yet at this time the supervisors are defendants, and their official performances are endeavored to be controlled by a writ of mandamus in equity, in no way involving said Berry or the county separately.

*Murphy v. Berry*, supra, in seeking to confine the effect of the opinion, contains the following language:

"The judgment of the trial court did not indicate upon its face that it was a judgment in abatement. It would operate presumptively, therefore, as a judgment in bar. To this extent the judgment was erroneous, and it will be modified accordingly."

Such precaution removed the possibility of pleading the "former judgment" as a bar on the theory of previous adjudication. Nevertheless, that does not affect the application of the "statute of limitations."

Assuming that the first attempt was "in law," to regain the money alleged to have been erroneously paid over, it could not be joined with mandamus. Section 12450 of the 1924 Code reads:

"When the action is brought by a private person, it may be

joined with a cause of action for such an injunction as may be obtained by ordinary proceedings, or with the causes of action specified in this chapter, but no other joinder and no counterclaim shall be allowed.''

An ''equity cause'' cannot be united with a ''lawsuit.'' Section 10960, Code of 1924. · Being, therefore, diametrically opposed, so that joinder is prohibited, they are not the same. If the first ''cause'' was in ''law,'' and the second in ''equity,'' naturally the result must be two ''causes,'' rather than one, and the present could not be a continuation of the past.

Extending the same logic further, and considering the other side of this part of the controversy, a ''cause of action'' originally was or was not stated. We have considered the event that it was set forth. On the other hand, let us presume otherwise. No ''cause of action'' being stated in the first venture, nothing could survive. To continue, that nullity could not result in an existence. Logically, then, the ''statute of limitations'' commenced to run against the equity cause from its inception, and was never tolled, the lack of a ''cause of action'' in law not being sufficient to do so.

Equally serious is the problem concerning the difference in defendants. Misnomer is offered as a way out of the difficulty. True, courts will look to the substance, rather than the name, in determining the nature of the cause. *State ex rel. Shafer v. Lowe* (N. D.), 210 N. W. 501. Even so, appellants' position is not made better. Johnson County and said Berry were defendants before. Personal judgment was claimed. Success would have meant the liability of both. Berry would have paid finally from his own pocket, and the burden of the county would have been borne by every taxpayer thereof. Notwithstanding the facts in that regard, declaration is made that the new parties are not different, since, in all events, the county is liable. Thereby the former inclusion of Mr. Berry is entirely overlooked, as well as the proposition that the county was primarily sued in a different capacity from that later attempted. Amendment for the relief now asked would have necessitated bringing in the said supervisors as individuals. Incorporation of them must result in a new action, rather than a maintenance of the old: that is to say, mandamus, aimed at the members of said board, rather

than a "lawsuit," to procure personal judgment against a corporation and one of its officers.

Remedy here desired could not have been obtained, even with the assistance of an amendment, because of said limitation bar. It is the supervisors, and not the county or Mr. Berry, that have the statutory authority to order the repayment. Official prerogative is involved in this event. Surely, the county holds the funds, but in trust, however, for the taxpayers of Iowa City, under the alleged conditions, and the parties adversely interested are the taxpayers in said county outside of that city. Clearly, the parties are different, and the beginning of the lawsuit wherein said county and Berry are defendants is not the commencement of a proceeding against the members of the board of supervisors. So the case at bar is not a continuation of the procedure culminating in the opinion of this court in *Murphy v. Berry*, supra.

Accordingly, the ruling of the district court was right, and its judgment is hereby affirmed.—*Affirmed*.

EVANS, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.