## ADDERS v. UNITED STATES.*
### No. 13604.

District Court, E. D. New York.
Sept. 5, 1933.

*Decree affirmed — F.(2d) —.

458

Samuel M. Brook, of New York City (Raiemond E. Dee, of New York City, of counsel), for libelant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y., and William E. Collins, Sp. Asst. U. S. Atty., of New York City.

CAMPBELL, District Judge.

This suit is brought to recover damages for personal injuries alleged to have been received by the libelant on board the steamship West Selene, on November 30, 1920, due to the negligence of the defendant.

In August, 1922, the libelant commenced in the United States District Court for the Southern District of New York an action at law against the United States Shipping Board Emergency Fleet Corporation and Moore & McCormack Company, Inc., to recover for injuries alleged to have been sustained by him aboard the steamship West Selene, on November 30, 1920, due to the negligence of the defendants. The defendants appeared and answered and set up among other defenses that the United States of America was the registered owner of the steamship West Selene, and that the plaintiff's (the present libelant's) sole remedy for his injuries was under the Suits in Admiralty Act (46 USCA §§ 741–752).

The action at law was tried in February, 1929, before the court and a jury, in the Southern District of New York, and a verdict found for the plaintiff, on which a judgment was entered on February 28, 1929.

An appeal was taken from said judgment by defendants, and, while the appeal was pending the Supreme Court of the United States, on January 6, 1930, in the cases of Johnson, Lustgarten et al. v. United States Shipping Board, 280 U. S. 320, 50 S. Ct. 118, 74 L. Ed. 451, decided that the remedy afforded by the Suits in Admiralty Act was exclusive of all other remedies at law as well as in admiralty, for any seaman injured on a merchant vessel registered in the name of the United States of America.

Shortly after the decision, the defendants moved thereon to dismiss the plaintiff's complaint on the ground that the court lacked jurisdiction of the subject matter of the action of the complaint.

The motion was based upon an affidavit by Mr. Donovan, counsel for the government, setting forth that the steamship West Selene was owned by the government, and that under the Lustgarten decision, upon which the application was based, the court was without jurisdiction. There were attached to Mr. Donovan's moving affidavit (a) a copy of the Lustgarten decision, and (b) a copy of the certificate of registry of the steamship West Selene, showing that the "United States represented by the Shipping Board is the only owner of the vessel called the West Selene."

That motion to dismiss came on to be heard, and in opposing the motion Mr. Brooks, the attorney for the plaintiff (present libelant), contended that, even if the Lustgarten decision controlled, the motion should have been made in the Circuit Court where the appeal was pending. Mr. Brooks was advised in court that the Lustgarten decision did apply, and that the motion would be granted, and thereupon he signed a stipulation consenting to the withdrawal of the defendants' appeal, the vacating of the judgment, and the discontinuance of the action, and that upon such stipulation an order was entered on August 18, 1930, discontinuing the action without costs:

"On the ground that the Court lacks jurisdiction of the subject matter herein as set forth under a decision handed down by the Supreme Court of the United States in the cases of John Johnson, Petitioner, v. United States Shipping Board and Lustgarten v. United States Shipping Board."

At the time of the decision in Johnson v. United States Shipping Board, supra, there were a large number of such suits pending

against the United States or its agencies, which on the authority of that case were subsequently dismissed for lack of jurisdiction after the two-year period for instituting actions under the Suits in Admiralty Act had expired, and to afford relief to those seamen Congress, by Act of June 30, 1932, 47 Stat. 420, amended section 5 of the Suits in Admiralty Act of March 9, 1920, 41 Stat. 526 (46 USCA § 745), which had limited the time of bringing of actions thereunder to a period of two years after the cause of action arose, so as to provide as follows:

"Suits as authorized in this chapter shall be brought within two years after the cause of action arises: Provided further, That the limitations in this section contained for the commencement of suits hereunder shall not bar any suit against the United States or the United States Shipping Board Merchant Fleet Corporation, formerly known as the United States Shipping Board Emergency Fleet Corporation, brought hereunder on or before December 31, 1932, if such suit is based upon a cause of action whereon a prior suit in admiralty or an action at law or an action under subdivision (1) of section 250 of Title 28, was commenced prior to January 6, 1930, and was or may hereafter be dismissed because not commenced within the time or in the manner prescribed in this section, or otherwise not commenced or prosecuted in accordance with its provisions: Provided further, That such prior suit must have been commenced within the statutory period of limitation for common-law actions against the United States cognizable in the Court of Claims: Provided further, That there shall not be revived hereby any suit at law, in admiralty, or under subdivision (1) of section 250 of Title 28 heretofore or hereafter dismissed for lack of prosecution after filing of suit."

On December 30, 1932, the libelant filed this libel in personam under the Suits in Admiralty Act as so amended, to recover for said alleged personal injuries sustained by him on the steamship West Selene on November 30, 1920.

That the respondent is a sovereign corporation and was the owner of the steamship West Selene which was operated as a merchant vessel was admitted.

By the original answer filed herein, the respondent admitted allegations to the effect that this court had jurisdiction of the subject-matter of this action, but, it being made to appear that such admissions were erroneously made, at the beginning of the trial, due notice of the motion therefor having been given, the respondent was permitted to amend its answer by not only denying the allegations of article seventh of the libel, as to the jurisdiction of the court, but also specifically alleging, in the thirteenth article of the amended answer, that it does not appear that any previous suit in admiralty or action at law, etc., based on the cause of action alleged in the libel, was commenced against the United States or the Fleet Corporation within the statutory period of limitation for common-law actions against the United States cognizable in the Court of Claims.

The point of the respondent's objection to the jurisdiction of this court is that this suit is not a revival of a previous action within the contemplation of the amendment. The previous action was commenced against the Fleet Corporation and Moore & McCormack Company, Inc. This suit is against the United States of America.

Respondent points out that the first proviso contained in the amendment is that the limitations contained in the section, that is, the two-year limitation, shall not bar a suit against the United States or the Fleet Corporation commenced before December 31, 1932, "if such suit is based upon a cause of action whereon a prior suit in admiralty * * * was commenced," etc.; and contends that this suit is not based upon the same cause of action set forth in the former suit, because it is against a new and distinct party.

In Pabst v. Roxana Petroleum Co. (D. C.) 30 F.(2d) 953, at page 955, Judge Hutcheson said on this general subject:

"In Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, it is said: 'The courts have found it very difficult to give any general definition of the phrase "cause of action" which would apply to all cases alike and few courts have attempted to do so. * * * However, the following definition will be sufficient for the disposition of the case now before us. In the abstract, a cause of action consists of "the right claimed or wrong suffered by the plaintiff, on the one hand; and the duty or delict of the defendant on the other."'"

In Phœnix Insurance Co. of Hartford v. United States of America, 3 F. Supp. 112, 113, 1933 A. M. C. 308, in which the amended statute in question was considered, Judge Hincks said:

"Every judicial action has in it certain necessary elements,—a primary right be-

longing to the plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant, which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing out of this delict; and, finally, the remedy or relief itself. Every action, however simple, must contain these essential elements, and, however complicated, it has no more." Wildman v. Wildman, 70 Conn. 700, at pages 707, 708, 41 A. 1. And further said, page 113 of 3 F. Supp.:

" 'Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term, and as it is used in the codes of the several states.' Pomeroy's Code Remedies, § 453."

From this I conclude that the cause of action depends upon the violation of a primary right.

The plaintiff's primary right was violated.

■ The defendant was, at the time that plaintiff suffered such violation, the owner of the steamship West Selene. The United States Shipping Board Emergency Fleet Corporation and the United States Shipping Board Merchant Fleet Corporation were agencies or agents of the United States, and any recovery that might have been had in the original action, against the Fleet Corporation, would have been paid by the United States.

We therefore have here a situation where the principal is substituted as defendant for the agent, and certainly that is in effect no change of party.

This, it seems to me, is even a stronger case against the government than Phœnix Insurance Company of Hartford v. United States of America, supra, where it was held that the second suit was for the same cause of action as the first, although the second suit was brought by the insurance company by right of subrogation, from having paid the original plaintiff on the policy of insurance issued by it.

Mellon v. Weiss, 270 U. S. 565, 46 S. Ct. 378, 70 L. Ed. 736; Herbert v. Payne (C. C. A.) 291 F. 555; and Davis v. Chrisp, 159 Ark. 335, 252 S. W. 606; cited on behalf of defendant, are clearly distinguishable, first, because these actions were commenced after the statute of limitations had run, whereas in the case at bar, by reason of the remedial legislation in the form of the amendment, it has not; second, because in those cases it was not the change of representatives for the government which was the principal, but the change from an action against the railroad corporation to one against the United States government.

Sidener v. Galbraith, 63 Ind. 89; Murphy v. Board of Supervisors, 205 Iowa, 256, 215 N. W. 744; and Third Nat. Bank & Trust Co. v. White (D. C.) 58 F.(2d) 411, are clearly not in point.

Larwill v. Burke, 19 Ohio Cir. Ct. R. 472, is clearly distinguishable. In that case the statute of limitations had run when the second action was brought. The first action was to recover plaintiff's share of the proceeds of sale of certain lands; the second included additional defendants, and was for fraud in the sale of the land.

■ While this court is of course familiar with the rulings that the United States cannot be sued without its consent, and that statutes subjecting the government to suit are subject to strict construction, I do not see even on such construction that this action fails, but we must not lose sight of the fact, which clearly appears from the committee reports to the Congress recommending the adoption of the 1932 amendment, that such amendment was intended to be remedial legislation.

The defendant's contention is not sustained. This court has jurisdiction.

Having found that the court has jurisdiction, I will now proceed to consider the case on its merits.

■ On November 9, 1920, the libelant was signed on the steamship West Selene as third assistant engineer, at a salary of $170 per month and found, as alleged in the amended libel, for a voyage of that vessel from New York to South American ports and return. The voyage commenced on November 13, 1920, and ended May 27, 1921.

The libelant was assigned to the 8 to 12 engine room watch.

On November 30, 1920, the vessel was at sea and about eight days steaming from Rio de Janeiro.

The libelant says, and he is neither corroborated nor contradicted by any witness who was present at the time or place, that at about 11:50 o'clock p. m. on said November 30, 1920, while standing upon the upper platform or grating, he heard the engine was taking water over from the boilers, and did not take time to walk around the ladder, but jumped down and ran for the throttle handle; that he released it and found the pressure was too great, and grabbed hold of it with

both hands and held it down for a few minutes to reduce the speed of the engine, because she was making between 75 and 78 revolutions a minute, and to reduce it down to around 5 or 6; that he took it for granted that the trigger had caught the quadrant, and was going to leave the throttle handle to go over to the middle column and open the water drain to let the water out of the engine, and had barely had his hands off, when the throttle handle came up and struck him and broke his glasses, and knocked him way back between the pumps, about 12 feet away.

The libelant further says that the next thing he remembered was that the oiler picked him up; that he saw the engine started in motion again and was going for the throttle handle, but his eyes were blurred, and he put his hands to his face and it was all full of blood. So he told his oiler to get hold of the throttle handle and check the engine's speed.

He further says, and from then on there are witnesses who in many respects differ with him, that then the second assistant came down and the chief engineer and oiler helped him up the ladder; that, after the oiler helped him up the ladder, he went to amidships where the master, Capt. Svane, the supercargo, Mr. Greer, and the chief steward, Mr. Johnson, dressed his wound; that they washed it, put some medicine on it, and they tied it up; that after that the libelant went to his room and tried to sleep, but suffered pain, "his head was all buzzing and he was hollering so loud that he woke himself up."

Up to this point, while there are some improbabilities in the libelant's story, the fact remains that he was injured by receiving a cut on the upper eyelid and also a cut over the eye, partly in the eyebrow, and that the glasses offered in evidence, which he claimed that he wore on that occasion, were badly bent and apparently had been in contact with some hard object.

His wounds were washed, treated, and bandaged, or the edges drawn together with adhesive tape.

He is clearly in error in the belief that he was struck in the eyes or on the forehead by the throttle handle. Any such blow as that would have destroyed the eye and fractured the skull.

He did not lose his eye or sight, and he did not have a fractured skull.

Whatever blow he received was received first on his glasses and transmitted by them to his eyelid and forehead. This is clearly shown by the fact that after arriving on deck he was able to go unassisted to midships for treatment.

The respondent attempted to cast doubt on the libelant's story as to the throttle handle suddenly coming up, but the evidence offered in its behalf was not only negative but was not convincing.

The chief engineer certainly did not testify to any inspection of the throttle handle, its spring or trigger, or whether the trigger would properly engage with the teeth on the quadrant, which would justify me in accepting the negative testimony on behalf of respondent as against the positive testimony on behalf of libelant.

The oiler could not with reasonable diligence be found and produced as a witness on the trial, and the second assistant engineer is dead.

The libelant testified, and there was no positive denial, that, after arriving at Rio de Janeiro, the throttle gear was taken down. In the base of the throttle lever was a small wire spring, the purpose of which was to force the worm on the throttle lever into mesh with the teeth on the quadrant, and to hold the two in mesh.

The libelant further testified, and it was not absolutely denied, that, when the throttle lever was taken apart at Rio de Janeiro, this spring was found to be spent, and that under the direction of his superior officers the libelant was directed to stretch the spring to increase its tension, and that the spring was put back in the base of the lever, but, even after such stretching, it did not function efficiently. The chief engineer denied any knowledge of such condition or any report thereof.

The libelant also testified that at Rio Grande Do Sul the boiler was drained and the drum inspected through the manhole, and that he found the dry pipe lying on the floor of the boiler drum in two pieces instead of being attached to the top of the drum.

The function of the dry pipe was to prevent priming, and libelant contends that the boilers started to prime when the dry pipe fell. This is only a conclusion, as there is no evidence when the dry pipe fell, and it is quite remarkable that the dry pipe should have fallen, due to the substantial manner of construction usually followed, and that the falling of a dry pipe would not have been reported to the chief engineer.

The contention of the libelant that the closing of the balance valve played any part in his injury was not sustained.

462

The evidence is not convincing that the balance valve was closed, and I am not convinced on all the evidence that the closing of the balance valve would have contributed to the injury to the libelant, and the burden of proof is on the libelant.

While it may have been that the libelant could have relieved the situation by opening the drain cocks, he was met with a sudden emergency, and the method he pursued would quickly accomplish the result; therefore he is not to blame for the selection he made.

The defective condition of the spring in the base of the throttle handle was the cause of the injury to libelant, and for that the respondent is liable, as it was guilty of negligence in so maintaining it.

This brings us to a consideration of the amount of damages.

█ It is contended on behalf of the libelant that he is now suffering from traumatic neurosis, and that it is permanent. I do not believe that such is the case, but he may well have been suffering from traumatic neurosis until the numbness disappeared after his operations. On the contrary, I believe that he is now suffering from what is termed compensation neurosis, and that with the termination of this litigation the libelant will be gradually relieved, substantially if not wholly, although, of course, the scars will remain.

The libelant received injuries and endured pain and suffering, but the history of his efforts subsequent to the injury clearly shows that he has not been rendered unfit to perform the duties of the employment which he followed before receiving the injuries in question.

For the balance of the six months' voyage of the West Selene after receiving the injuries, he never lost a day or failed to perform his duties on any watch. On the arrival of the ship in New York, in May 1921, he left her. There was then in progress a strike of marine engineers. In January, 1922, he went on the steamship Eastern Breeze of the same line, in the same capacity of third assistant engineer, and served until August 30, 1922. From August 30, 1922, to October 27, 1922, the libelant served as third assistant engineer on the Commercial Scout. After that, in 1923, he was third assistant engineer on the steamship George Allen. In 1931 the libelant went out on a Ward Line vessel as fourth assistant engineer. This reduction, however, was due to the fact that marine engineers found it difficult to secure positions in the ranks they were entitled to, and were willing to take what they could get.

In September, 1923, the libelant applied for and took the examination and obtained a license as first assistant engineer. An examination of the questions and answers is conclusive proof that the mental condition of the libelant was not impaired.

The letters presented by the libelant himself to the local inspectors from the chief engineers under whom he had served, as well after as before the injuries of which he now complains, show clearly his ability to perform his duties.

In 1928 the libelant allowed that license to expire, and in January, 1931, he applied for a renewal of his license as first assistant engineer. At that time he was not required to present letters of recommendation, because he had already had a license as first assistant engineer, but he did present a letter from Moore & McCormack Company, Inc., showing the various vessels of theirs on which he had served. An examination of the questions and answers of that examination, in his handwriting, clearly shows that his mental condition was not impaired.

The libelant did suffer from neuroma, and was operated on by Dr. Barber; there being two operations, one dissecting out the tumor in the right superorbital nerve, and the other cutting the nerve on both sides of the tumor and bringing the ends together and a suture. This was undoubtedly followed by numbness on the right side of the head, for some six months to a year. The dizziness, nightmares, and such symptoms may well have been caused by other conditions, and I believe his twitching of the face does not regularly occur, and that his deliberateness in speech is not unusual with him and not greater than before his accident, except when he allows himself to brood over things that are not real, and, if real, are largely exaggerated, due to the lapse of time and the length of this litigation.

The length of the litigation is not chargeable to respondent, as the injury was suffered on November 30, 1920, the action was not commenced until August, 1922, and first tried in February, 1929.

The vision of the eye was not affected, although undoubtedly with the advance of years he has required stronger glasses.

Undoubtedly for a period of time after his operations the libelant did find it hard to endure the heat of an engine room.

The libelant is entitled to a decree against the respondent for $4,500, with costs.

A decree may be entered in accordance with this opinion.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, as provided by the rules of this court.