## THE CITY OF BRUNSWICK.
### SAMUEL SANDAY & CO. et al. v. UNITED STATES, and seven other cases.

Nos. 507, 497, 498, 500, 505, 506, 508, 510.

District Court, D. Massachusetts.

March 20, 1934.

Bigham, Englar, Jones & Houston, of New York City, and Burnham, Bingham, Pillsbury, Dana & Gould, of Boston, Mass., for Samuel Sanday and others.

Bigham, Englar, Jones & Houston, of New York City, and Burnham, Bingham, Gould & Murphy, of Boston, Mass., for C. Russell Walton.

Bigham, Englar, Jones & Houston, of New York City, Baker, Botts, Andrews & Wharton, of Kansas City, Mo., and Burnham, Bingham, Pillsbury, Dana & Gould, of Boston, Mass., for T. J. Brodnax and others.

Abbott, Fauntleroy, Cullen & Edwards, of St. Louis, Mo., Bigham, Englar, Jones & Houston, of New York City, and Burnham, Bingham, Pillsbury, Dana & Gould, of Boston, Mass., for William T. Brooking and others.

Bigham, Englar, Jones & Houston, of New York City, Burnham, Bingham, Pillsbury, Dana & Gould, of Boston, Mass., and Rosen, Kammer, Woof & Farrar, of New Orleans, La., for H. Janssen Lumber Co.

Bigham, Englar, Jones & Houston, of New York City, Burnham, Bingham, Pillsbury, Dana & Gould, of Boston, Mass., and Spencer, Gidiere, Phelps & Dunbar, of New Orleans, La., for Standard Export Lumber Co.

Burnham, Bingham, Pillsbury, Dana & Gould, of Boston, Mass., Bigham, Englar, Jones & Houston, of New York City, and

Burry, Johnstone, Peters & Dixon, of Chicago, Ill., for Mercantile Trading Co.

Barbour, McDavid & Barbour and F. W. Barrett, all of Springfield, Mo., Bigham, Englar, Jones & Houston, of New York City, and Burnham, Bingham, Pillsbury, Dana & Gould, of Boston, Mass., for Herman J. Meyer and others.

Frederick H. Tarr, U. S. Atty., of Boston, Mass. (by A. Chesley York, Asst. U. S. Atty., of Boston, Mass.), for the United States.

BREWSTER, District Judge.

These eight suits in admiralty, together with two other libels brought against the United States Shipping Board Merchant Fleet Corporation (hereinafter called the Fleet Corporation), were first consolidated for the single purpose of determining the question of the liability of the United States for the loss of cargoes on the City of Brunswick which stranded in Halifax Harbor in 1921. These suits came before Judge Lowell for hearing upon the merits, and he found that the United States was liable, notwithstanding the Harter Act § 3 (46 U. S. C. § 192 [46 USCA § 192]), by reason of failure to exercise due diligence in providing a seaworthy vessel. He also found that the United States was liable because of unnecessary deviation.

Thereafter the cases were consolidated for all purposes, including final decrees, and by amendment the United States now seeks to avail itself of the statute limiting liability. Rev. St. §§ 4283–4286, 46 U. S. C. 183–186 (46 USCA §§ 183–186). The amount of the loss sustained by each libelant is not in dispute, parties having stipulated in this regard.

According to Judge Lowell's opinion (4 F. Supp. 908, 909), it has been already adjudicated in this court that, notwithstanding error in navigation, the United States was liable because of a failure to exercise due diligence in making the City of Brunswick in all respects seaworthy; that the unseaworthiness was due to defective condensers, resulting in the disabling of two of her three boilers; that this want of due diligence was a contributing cause to the loss; that there was deviation which was not excused by any provisions of the bills of lading.

The controversy as it is now submitted presents two aspects, one involving the right of the several libelants to sue, and the other involving the right of the government to limit liability.

On the first aspect of the case it is necessary to refer to the 1932 amendment to section 5 of the Suits in Admiralty Act, which, as amended (46 USCA § 745), so far as material, reads as follows:

"§ 745. *Causes of Action on Which Suits may be Brought; Limitations.*

"Suits as authorized in this chapter shall be brought within two years after the cause of action arises: Provided further, That the limitations in this section contained for the commencement of suits hereunder shall not bar any suit against the United States or the United States Shipping Board Merchant Fleet Corporation, formerly known as the United States Shipping Board Emergency Fleet Corporation, brought hereunder on or before December 31, 1932, if such suit is based upon a cause of action whereon a prior suit in admiralty or an action at law or an action under subdivision (1) of section 250 of Title 28, was commenced prior to January 6, 1930, and was or may hereafter be dismissed because not commenced within the time or in the manner prescribed in this section, or otherwise not commenced or prosecuted in accordance with its provisions. * * * *"

It is to be noted that Judge Lowell, in his opinion, further stated that it was admitted that all suits brought before him were "properly prosecuted under the terms of that act." Notwithstanding this admission, the government attacks the right of these libelants to maintain suits under this remedial statute.

While the government does not seem disposed to concede that any of the libels were properly brought under the Enabling Act, the objections raised to many of them do not call for separate consideration. In any event, what I will have to say about the cases which I am about to consider will effectually dispose of the less important objections made to the remaining cases.

I will take up first a group of cases which, for convenience, may be referred to as the "grain cases," viz.: Nos. 498, T. J. Brodnax et al., Trustees, v. United States; 500, William T. Brooking et al., Trustees, v. United States; 508, Mercantile Trading Co. v. United States. The facts common to these three cases, briefly stated, are as follows: Cargoes of grain were loaded at New Orleans. The shippers were Missouri corporations, to which were issued bills of lading by duly authorized agents of the Fleet Corporation. This grain was sold to the Belgian government, prior to the loading, which paid loading charges, freight, and took out insur-

ance in the name of the Belgian government. After the loss, the Belgian government declared abandonment of its interest in the cargoes to underwriters, and received from the underwriters payments of their losses.

None of the libelants at the time of the loss had any interest in the cargoes. Each of the libelant corporations in 1926 filed in this court libels against the Fleet Corporation. Each of said suits was dismissed because of the decision of the United States Supreme Court in the case of Johnson v. Fleet Corporation, 280 U. S. 320, 50 S. Ct. 118, 74 L. Ed. 451. In each instance the libel now before the court is based upon the same cause of action as was the earlier suit, to which reference has been made. In each case amendments have been duly allowed by which it has been made to appear that prior to the loss the Belgian government was owner of the grain, and that each libel was filed on behalf of the Belgian government, which had requested and authorized the proceedings.

In No. 498, T. J. Brodnax et al., Trustees, v. United States, the bill of lading covering the shipment of grain involved ran to the Frisco Elevator Company, a Missouri corporation which had been dissolved by action of the state after forfeiture of its charter and prior to the filing of the original libel. In No. 500, William T. Brooking et al., Trustees, v. United States, the bill of lading covering the shipment of grain there involved had been issued to the Marshall Hall Grain Company, also a Missouri corporation, which, after the filing of the original proceeding and before the filing of the present libel, was dissolved by its own voluntary act. In 508, Mercantile Trading Co. v. United States, the bill of lading ran to the J. Rosenbaum Grain Company, a corporation organized under the laws of Illinois, the name of which corporation had been changed to the Mercantile Trading Company subsequent to the first proceeding. The Statutes of Missouri (section 4561 and 4622 of the R. S. of 1929 [Mo. St. Ann. §§ 4561, 4622, pp. 2007, 2051]) provided as follows:

"Sec. 4561. Upon the dissolution of any corporation already created, or which may hereafter be created by the laws of this state, the president and directors or managers of the affairs of said corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of such corporation, with full powers to settle the affairs, collect the outstanding debts and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them; to sue for and recover such debts and property by the name of the trustees of such corporation, describing it by its corporate name, and may be sued by the same; and such trustees shall be jointly and severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands. (R. S. 1919, § 9755.)

"Sec. 4622. Trustees, in Case of Forfeiture.—When the forfeiture of the certificate, or license, of any corporation has been declared, the officers and directors or the manager, or managers, of the affairs of said corporation, at the time such forfeiture is declared, by whatever name they may be known in law, shall be trustees of such corporation with full power to settle its affairs and distribute its assets among its stockholders; after paying the debts due and owing by such corporation; and as such trustees to sue and recover debts and property due such corporation, and they shall be jointly and severally responsible to the creditors and stockholders of such corporations to the extent of its property and assets that may properly come into their hands. (R. S. 1919, § 9816.)"

In the case of the Missouri corporations, the second libels were brought by the officers and directors or managers of the corporation in accordance with the provisions of the foregoing statutes.

The government bases its objection to these libels on several grounds: (1) That they do not come within the provisions of the remedial act, inasmuch as the original suit in admiralty was brought against the Fleet Corporation; (2) that each of the original libels was filed in the name of the corporation, and the right of recovery asserted therein was based upon the theory that they sustained the loss as the result of the disaster, while at the time neither the libelants nor the Belgian government had any interest in the cargo of grain and that the underwriters who had paid the Belgian government could assert no rights by subrogation through the three corporations who were shippers; (3) that the statutes of Missouri only authorized the officers to sue for and recover debts due to it, and gave them no authority to maintain a suit for the benefit of another.

Taking up these objections in order, the first objection is not presented to the federal courts for the first time. It has been raised and argued in at least two cases brought in other jurisdictions where the deci-

sions have been adverse to the contention of the government. Phœnix Ins. Co. of Hartford v. United States (D. C.) 3 F. Supp. 112; Adders v. United States (D. C.) 5 F. Supp. 457. With the conclusions in these cases I am in accord, and they effectually dispose of the government's first objection.

In regard to the second objection, it is to be noted in each case that, in both the original libel and in the one filed in the present suit, it is alleged that the Corporation shipped the grain on the City of Brunswick; that the Fleet Corporation issued its bill of lading contracting to transport the grain to Antwerp and there deliver it to the order of the shipper. The Corporation was therefore both shipper and consignee. The authorities are agreed that the shipper who made the contracts of carriage has a right of action, even though title to the merchandise has passed before any liability has arisen. This right is based upon privity of contract between the shipper and the carrier. The Thames, 14 Wall. 98, 20 L. Ed. 804; Northern Commercial Company v. Lindblom (C. C. A.) 162 F. 250; National Interocean Corp. v. Emmons Coal Mining Corp. (D. C.) 270 F. 997; Blanchard et al. v. Page, 8 Gray (Mass.) 281.

There is no allegation in the original libel that the Corporation was the owner of the grain, and in the amendment, which was seasonably presented and allowed, it is set forth that the loss was sustained by the Belgian government on whose behalf the proceedings are being prosecuted. That recovery may be had in such a proceeding hardly admits of doubt in view of the authorities. Houseman v. The North Carolina, 15 Pet. 40, 10 L. Ed. 653; Souffront v. La Compagnie des Sucreries de Porto Rico, 217 U. S. 475, 487, 30 S. Ct. 608, 54 L. Ed. 846; United States v. United States Steel Products Co. (D. C.) 27 F.(2d) 547. The Vaughan and Telegraph, 14 Wall. 258, 266, 20 L. Ed. 807.

The fact that since the loss occurred the Belgian government has been reimbursed by the underwriters is a matter with which this court has no concern. The Potomac v. Cannon, 105 U. S. 630, 26 L. Ed. 1194; Phœnix Ins. Co. v. Erie & Western Transportation Co., 117 U. S. 312, 321, 6 S. Ct. 750, 29 L. Ed. 873; United States v. American Tobacco Co., 166 U. S. 468, 17 S. Ct. 619, 41 L. Ed. 1081; Phœnix Ins. Co. v. United States (D. C.) 3 F. Supp. 112.

The second objection, therefore, cannot be sustained.

The third objection is based upon the proposition that the Missouri statutes do not confer upon the officers of a Missouri corporation, whose charter has been forfeited or surrendered, any right to maintain any suit for the benefit of another. The federal court in the Eighth Circuit has had occasion to deal with a similar argument, advanced by the defendants in the case of Illinois Power & Light Corporation v. Hurley et al. (C. C. A.) 49 F.(2d) 681. This was a case brought by the officers and directors of a dissolved Missouri corporation to recover damages on account of fire loss which was caused by the negligence of the appellant's predecessor. It appeared that certain insurance companies had paid the loss. The trustees were allowed to recover notwithstanding. Although it was held in that case that the legal title to the cause of action remained in the corporation, I do not think that the case can be distinguished from those at bar because, as we have already seen, a cause of action still remained in the shippers upon the bills of lading. The Hurley Case is important, however, as establishing the rule that under the Missouri statutes the liquidating officers may, as trustees, sue to recover for a loss even though the corporation has been fully indemnified, so that by the rule of subrogation a third party would derive the benefits of the recovery.

I regard the court of the Eighth Circuit as the best judge of the effect and operation of the Missouri statutes, and am, therefore, contrained to adopt their views.

It is my opinion, therefore, that none of the objections to the capacity of these parties is well taken.

No. 510, Louis S. Meyer et al. v. United States of America, is another case where the first proceedings were instituted by John F. Meyer & Sons Milling Company, a Missouri corporation, later dissolved, and the pending libel was brought by the officers as trustees under the Missouri statutes, already considered. In this case, the title to the merchandise was in the corporation at the time of the loss. It has appeared that before dissolution the John F. Meyer Milling Company conveyed its assets to the Meyer Milling Company. The terms of the assignment are not before the court, but, proceeding upon the assumption that the rights to recover for the loss of cargo on the City of Brunswick were assigned, the government has interposed the same objections which have already been considered in connection with the "grain cas-

es." In this case also the loss has been paid by underwriters who have filed a petition to intervene, which I have allowed. So far as the objections are based upon the fact that the libelants are not now the owners of the claim, this objection must be overruled in view of my disposition of the "grain cases." It further appears, however, that the original suit, brought in 1926 in the Court of Claims, was brought in the name of the corporation, which had been dissolved some three years previously. This raises the question whether the case comes within the amendment of 1932. While the original suit was before the Court of Claims, the government stipulated that the claimant was an existing Missouri corporation, and that suit was dismissed, not because the corporation had been previously dissolved, but solely on jurisdictional grounds following the decision in U. S. Shipping Board Emergency Fleet Corp'n v. Rosenberg Bros. & Co. (The West Aleta), 276 U. S. 202, 48 S. Ct. 256, 72 L. Ed. 531. The pending libel is based upon a cause of action whereon a prior action at law was brought in the Court of Claims and was "dismissed because not commenced within the time or in the manner prescribed in the Suits in Admiralty Act." Had it not been for the decision in the case of The West Aleta, and other decisions to the same effect, the original suit would have proceeded to final judgment. I am of the opinion, therefore, that the libelants had not lost their right to avail themselves of the provisions of the 1932 amendment to section 5 of the Suits in Admiralty Act.

The government has also complained that the libelants in all these cases have failed to establish their status by affirmative evidence. In view of Judge Lowell's observation that it was admitted that all suits before him were properly prosecuted under the terms of the act, I have serious doubts whether this question is now open to the government but, if it is, an examination of the stipulations and exhibits satisfy me that, in the case of each of the libels, all the allegations essential to their right to proceed in the prosecution of these cases to final decree have been proved.

I cannot refrain from remarking, in passing, that the numerous technical difficulties with which the government has confronted the libelants are wholly incompatible with the spirit and purpose of the enabling act which obviously was intended to give claimants, whose rights had been lost because of the limitation in the Suits in Admiralty Act, an opportunity to establish any just claim.

Coming now to the question as to the respondent's right to limit liability: Rev. St. § 4283 (46 USCA § 183), limits the owner's liability to his interest in the vessel and pending freight if the loss is occasioned or incurred without the privity or knowledge of the owner. The libelants contend that this right of limitation is defeated because the Fleet Corporation is chargeable with both knowledge and privity (1) of the negligent failure to provide a seaworthy vessel, and (2) of the unnecessary deviation.

It has already been determined by Judge Lowell that due diligence had not been exercised to make the City of Brunswick in all respects seaworthy, that the unseaworthiness was due to defective apparatus, and that the negligence contributed to the stranding. The owner is concluded by these findings. In re P. Sanford Ross, Inc. (C. C. A.) 204 F. 248.

On the question of the government's right to limit its liability, additional evidence has been offered, much of which need not be considered, as obviously it is material only upon issues which have already been settled in this court. It might be material if I were reviewing the decision of Judge Lowell, which, of course, I have no power to do. In so far as this new evidence bears upon the right of the United States to limit liability, I have considered it. I consider first the knowledge or privity of the Fleet Corporation in connection with the unseaworthiness of the City of Brunswick. The vessel had recently been built. On the way from the builder's yard to New Orleans, where a part of the cargo was received, it was noticed that the condensers were leaking. Judge Lowell, in his opinion, has described in detail the construction of these condensers and the effect of leaks therein. I do not need now to repeat the description. The disclosure of the defects and the repairs upon the condenser were made at New Orleans, and it may be well here to refer to the set-up of the organization so far as it applied to this territory. The Fleet Corporation had two principal subdivisions, one known as "Division of Construction and Repairs"; the other as "Division of Operations." It was provided that, if any defects appeared before the vessel was accepted, it came within the jurisdiction of the Department of Construction and Repairs. This department had a field organization divided into districts, one of which was the Gulf District, embracing the ports of New Orleans and Mobile, with headquarters at New Orleans. This district was in charge

of D. T. Williams, district manager; F. E. Ames was assistant district manager. Mr. Beauvais was chief inspector. The local manager at Mobile, Ala., was G. K. Miller. It appeared that in each district the chief inspector had direct charge of all activities of the Construction and Repair Department. The leaks in the condenser were called to the attention of the assistant district manager, Mr. Ames, and Chief Inspector Beauvais. It was recommended that all tubes (about 1,800 in number) be repacked, but Beauvais, with Ames' consent, decided to repack only those that were then leaking, some 300 to 400 in number. Judge Lowell has found that the repair work was inadequate and that this failure was responsible for what later developed on the two disabled boilers. I find that Beauvais and Ames both had knowledge of, and were privy to, this failure to exercise due diligence in making the vessel seaworthy. It also appeared in evidence that, after the work had been done on the condensers, it was subjected to tests which were satisfactory to the engineer on the vessel and to the chief engineer in charge of the repairs.

It is contended by the government that the owners cannot be charged with knowledge or privity if they left the repairs and extent thereof to competent surveyors or engineers. The decision as to what should be done was made by Beauvais and approved by the assistant district manager. These officials were invested by the owners with full authority to make a final decision in the premises.

As to the deviation, the Shipping Board had promulgated an order that before any vessel could be accepted from the builder it was necessary to give the vessel a loaded trial trip, to be conducted under the supervision of the Construction and Repair Department. In this case the assistant district manager of the Gulf District, Mr. Ames, ordered a trial trip to be taken from Mobile after the vessel had been fully loaded with libelants' cargoes. He appointed a trial board to go upon the trip. This board was made up of G. J. De Lacroix of Mobile, engineer inspector of Maintenance and Repair Department, as representing that department, and Guy A. Meyer, as senior engineer inspector, as representing the Bureau of Construction. In compliance with this order, a trial trip was made from Mobile after the vessel had been loaded with the cargoes in question. This trial trip was made out into the Gulf of Mexico and back to Pensacola Buoy, and Judge Lowell has found that this trip was an unnecessary deviation. It appears, moreover,

that not only was the trip ordered by the assistant manager of the Gulf District and was participated in by representatives of other Bureaus of the Shipping Board, but it was also known to the inspector of Construction and Repair Department and to the local manager at Mobile of the Construction and Repair Department, namely, Mr. George K. Miller.

In respect to both the negligent repairs and the deviation, the representatives of the Fleet Corporation, who were empowered by that Corporation to finally determine the matters involved, had full knowledge of, and were privy to, the repairs and to the deviation, and their knowledge and privity is chargeable to the owners. The Fleet Corporation could only act through its duly authorized agents, and knowledge of those in authority to act with respect to the subject-matter is the knowledge of the owner. Spencer Kellogg & Sons, Inc., v. Hicks, Admx., 285 U. S. 502, 52 S. Ct. 450, 76 L. Ed. 903; In re P. Sanford Ross (C. C. A.) 204 F. 248; The Erie Lighter 108 (D. C.) 250 F. 490; Eastern S. S. Corp. v. Great Lakes Dredge & Dock Co. (C. C. A.) 256 F. 497, 502; Boston Towboat Co. v. Darrow-Mann Co. (C. C. A.) 276 F. 778; In re Pennsylvania R. Co. (C. C. A.) 48 F.(2d) 559; In re Liverpool, Brazil & River Plate Steam Nav. Co. Ltd. (D. C.) 60 F.(2d) 273; The Rambler (C. C. A.) 290 F. 791, 1923 A. M. C. 618.

The burden of proving lack of knowledge and privity rests upon the owner. Christopher v. Grueby (C. C. A.) 40 F.(2d) 8; In re Diamond Coal & Coke Co. v. Iron City Sand Co. (C. C. A.) 297 F. 246.

If the officials higher up in the organization were ignorant of the repairs at New Orleans, or of the deviation, the government's evidence fails to establish its burden of showing such want of knowledge or privity.

So far as it is a question of fact, I find on all the evidence that the failure to exercise due diligence in making the vessel seaworthy and the deviation were known to duly appointed officials or duly authorized agents of the Fleet Corporation, that they were privy to the acts or omissions which contributed to the losses involved, and that the owner is chargeable with such knowledge and privity.

There are cases to the effect that there can be no limitation of liability if there is an unreasonable deviation. The Pelotas (C. C. A.) 66 F.(2d) 75; The Frederick Luckenbach (D. C.) 15 F.(2d) 241.

In conclusion, I find and rule that in all eight cases the libelants are entitled to pre-

vail in these proceedings and that the government is not entitled to take advantage of the statute limiting liability. It follows that final decrees may be entered for the libelants, as listed below, for the amounts set opposite their respective names, with interest from dates as listed:

I have not considered No. 512, T. J. Brodnax et al. v. United States Shipping Board Emergency Fleet Corporation, and No. 509, Mercantile Trading Co. v. United States Shipping Board Merchant Fleet Corporation, because these libels were brought for the same causes as those stated in Admiralty Nos.

| | Libelant | Stipulated Damages | Date of the filing of the libels from which interest at 4% should be computed. |
|---|---|---|---|
| Case No. 507. | British & Fgn. Mar. Ins. Co. (Saml Sanday & Co. $63,200.00) | $63,200.00 | Dec. 6, 1932 |
| | Standard Mar. Inc. Co., Ltd. (L. Brabandt & Co. $ 7,848.34 / Am. Vermeulen 5,805.04 / Henri Deweert 5,019.01 / Devriendt Freres 4,983.01 / Gaston R. Schul 2,187.26 / Carl Rensing 2,643.50 / Emile Gesnot 5,113.28) | 33,599.44 | Dec. 6, 1932 |
| | Union Ins. Society of Canton, Ltd. (Emile Gesnot 2,661.11 / Van Nuland Freres 4,120.77) | 6,781.88 | Dec. 6, 1932 |
| | Western Assurance Co. (C. F. M. Stahl 288.81) | 288.81 | Dec. 6, 1932 |
| | The London Assurance (Marine) (DuPasquier & Co. 1,543.09) | 1,543.09 | Dec. 6, 1932 |
| | Union Mar. & Gen. Ins. Co. Ltd. (C. Jussiant & Co. 23,144.96) | 23,144.96 | Dec. 6, 1932 |
| | The Thames & Mersey Mar. Ins. Co., Ltd. (M. & J. Caron Freres, 1,169.90) | 1,169.90 | Dec. 6, 1932 |
| Case No. 506. | Standard Exp. Lumber Co., Ltd., as trustee for C. Jussiant & Co. | 2,598.84 | Dec. 21, 1932 |
| Case No. 505. | H. Jannsen Lumber Co., Inc., as trustee for A de Brouchere | 5,491.20 | Dec. 21, 1932 |
| | H. Jannsen Lumber Co., Inc., as trustee for Magasins Eug. Schmidt | 2,361.11 | Dec. 21, 1932 |
| Case No. 487. | C. Russell Walton, as trustee for L. Brabandt & Co. | 4,407.39 | Dec. 14, 1932 |
| Case No. 510. | Herman J. Meyer et al., as trustees for John F. Meyer & Sons Milling Co.; and Sea Ins. Co., Ltd., as intervenor | 7,931.73 | Dec. 23, 1932 |
| Case No. 500. | Wm. T. Brooking et al., as trustees for the Belgian State | 49,404.44 | Oct. 14, 1932 |
| Case No. 498. | T. J. Brodnax et al., as trustees for the Belgian State | 16,755.20 | Oct. 12, 1932 |
| Case No. 508. | Mercantile Trading Co., as trustee for the Belgian State | 128,615.20 | Nov. 1, 1932 |
| | | $347,293.19 | |

My findings of fact and rulings of law, as they appear in the foregoing opinion, may be deemed to be a statement of facts and conclusions of law within the meaning of the Admiralty Rule 46½ (28 USCA § 723).

498 and 500, and it was represented to me that, if the libelants prevailed in the suits against the United States, proper entries would be made dismissing the suits against the Fleet Corporation.